JOHN SHOUP, et al., v. THE CENTRAL BRANCH UNION PACIFIC RAILROAD CO.

24  547
41  752
24  547
55  579
24  547
62  320
24  547
82  135

1. TAXES — Relief from Duty to Pay; Contract Construed; Valid Tax Deed. S. entered into a contract in writing, in 1868, with a railroad company, to purchase certain real estate, and covenanted to pay all taxes which should be lawfully imposed on the premises. Under the contract, he went into possession of the land, paid a small portion of the purchase-money, and made valuable improvements. He defaulted as to the payment of taxes for the years 1873, 1874, 1875, and 1876. In May, 1877, there was a settlement between S. and the company, and S. relinquished all his right in the land and all his improvements to the company; the company accepted the surrender of his written contract, and released all its claims against him under the covenants thereof. Held, That S. was thereby relieved of all duty or obligation, to pay past or future taxes on the premises; and after such settlement, S. was not debarred from acquiring a valid tax title to the premises, on account of his former relation with the railroad company, under the contract of purchase.

2. IRREGULARITIES, *Not Invalidating Tax Proceedings.* ˙ The omission of the official title of the assessor after his signature to the oath to his official return of the valuation of real estate, and the absence of the official seal of the county clerk on the jurats to the oath of the assessor attached to such return, and upon the affidavits of the publication of the tax levy and tax sale, are mere irregularities, and will not invalidate the tax proceedings based thereon.

3. TAX DEED, *Valid; Tax-Sale Notice.* The omission of the name of the person to whom a tract of land is assessed, from the notice of the tax sale, and from the notice of the expiration of the time for redemption, will not invalidate the title conveyed by the tax deed to the tax purchaser of the real estate.

*Error from Jackson District Court.*

EJECTMENT brought by the *Central Branch Union Pacific Railroad Company* against *John Shoup, Winfield Shoup,* and *Thomas H. Phillipi,* to recover the possession of the southeast quarter of section number˙ thirty-five, in township number five, of range number sixteen, situate in Jackson county.    The petition was filed April 12, 1878, and alleged that the plaintiff was the owner of the land in fee.    John Shoup filed a general denial.    Winfield Shoup denied that the plaintiff was seized in fee of the land and Thomas H. Phillipi, in his answer, denied title in the plaintiff, alleged that he was the owner and in the possession of the premises, and demanded that the claim of plaintiff be determined null and void. Plaintiff filed a reply, containing a general denial to the answer of Phillipi.    On the second trial, at the April Term of the court for 1879, the case was submitted to the court, without a jury.    At the request of all the parties, the court made certain findings of fact, separately from its conclusions of law. The conclusions of law were:

" 1. The plaintiff is, and was at the commencement of this action, the owner in fee simple of the lands described in plaintiff's petition, and is and was entitled to the possession thereof, and the defendants were and are unlawfully keeping the plaintiff out of the possession thereof.

" 2. The said John Shoup, defendant, could not, on account of the relation in which he stood to the plaintiff, acquire a valid tax title on said tract of land for the taxes referred to in the foregoing findings of fact.

"3. The said tax deed is null and void by reason of the defective and insufficient execution of the prerequisites to the execution of said tax deed.

"4. The defendant, Thomas H. Phillipi, is entitled to recover of the plaintiff (before the plaintiff shall be let into possession of said land) the full amount of all taxes paid on said land, with interest at the rate of fifty per cent. per annum up to the 26th day of June, 1877, the date of said tax deed, including the costs of said deed and the recording of the same, with interest on said amount at the rate of twenty per cent. per annum to this date (April 19, 1879), amounting in the aggregate to the sum of $367.28."

Judgment was rendered, adjudging to the railroad company possession of the premises described in the petition, but requiring as a condition before it should be let into possession that it should pay to Thomas H. Phillipi the taxes paid, with interest at the rate of fifty per cent. per annum up to June 26, 1877, (the date of the tax deed,) including the costs of the deed and the recording of the same, with interest on said amount from said date to the trial, at the rate of twenty per cent. per annum, amounting to $367.28. All parties filed motions for a new trial, and to vacate certain findings. These motions were overruled, and exceptions taken. Defendants bring the case here, and plaintiff files a cross-petition in error; therefore both parties complain of the judgment, and ask for a review of the proceedings of the district court.

*John C. Douglass,* and *Hayden & Hayden,* for plaintiffs in error:

The court erred in the third finding of fact, and in the first conclusion of law. But if there can be any doubt as to the construction which should be placed upon the third finding of fact, the admission made by the parties upon the trial shows that the railroad company, in consideration of the surrender of the contracts, land and improvements by Shoup, released "all its claims against said John Shoup under and by virtue of the covenants on the part of said John Shoup, in the said contracts and each of them contained." The case then stands upon this point as though Shoup, having failed

to pay the taxes during the continuance of his contracts, had, upon the surrender thereof, had an accounting and settlement with the railroad company therefor, and had then, in pursuance of such settlement, paid to the railroad company an amount sufficient to redeem the land from the delinquent taxes. Can it be held in such case that if the railroad company had failed to use the money for the purpose of redeeming the land, but allowed the same to be conveyed for taxes, that John Shoup might not thereafter have acquired a valid title from the purchaser? ( 21 Kas. 712; 20 id. 709.)

The finding of the court below that the tax deed was in due form, is evidence that no defects in the tax sale or proceedings exist, except such as are specially found by the court. The most of the defects appearing in the tax-sale proceedings are plainly "mere irregularities" within the meaning of § 113, ch. 107, Gen. Stat. 1868.

In the recent case of *Stockle v. Sillsbee,* in the Supreme court of Michigan, ( 2 N. W. Rep. N. S. 900,) Judge Cooley said: "But the time has gone by, if it ever was, when the proceedings of taxing-officers are to be criticised with microscopic nicety, and the exact time and method of every step examined to detect a departure from the law, however insignificant or unconstitutional. The policy of the law is, that parties shall pay legal taxes, even though there may be some irregularities in demanding them, and that they shall complain to the courts of those errors only which may injure them."

Even in the absence of a statutory provision similar to § 113, *supra,* the old rule was that tax proceedings, although not exactly and punctiliously correct, are yet sufficiently so for legal purposes, in any case, if no error was committed which could prejudice the person taxed. ( 5 Mich. 151; 16 id. 162; 33 id. 29; Blackwell on Tax Titles, 262–3; Cooley on Taxation, 219, 220.)

The question of irregularities in tax sales and the effect of curative statutes is discussed in Cooley on Taxation, 230, and it will be seen that the Kansas prospective curative law, the

most far-reaching and radical one in existence, is not even mentioned; but under a less sweeping law (Iowa) even the entire omission of a notice of sale is held not to render the sale or deed void. (16 Iowa, 508; 29 id. 356, 388–9; 31 id. 64, 66; 37 id. 568; 38 id. 141; 3 N. W. Rep. N. S. 604.)

But even if said §113 will not bear the construction claimed. by us, still we claim that the defects in the tax-sale proceedings as shown by the findings of the court below go to the form only of the proceedings; and the rule is well settled, that when the objection is a mere non-compliance with some direction of the statute, notwithstanding which the tax may have been entirely just, it ought not to have the effect of invalidating the proceedings. (11 Wis. 470, 497. See also 19 id. 619; 9 Kas. 477, 487; 21 id. 83, 87; 9 Pa. St. 170.)

The most serious defect found in the tax proceedings is, the omission of the name of John Shoup in the redemption notice, but the notice being perfect in all other respects, the defect is clearly a mere irregularity; and hence, under our statute, it does not affect the validity of the deed. (21 Wis. 174, 178, 331, 336; 1 Watts, 42; 4 id. 363.)

*Everest & Waggener*, for defendant in error :

The judgment of the court below setting aside the tax deed which had been issued on the land in dispute, was correct. John Shoup was under obligation, by his contracts with the railroad company, and by reason of his occupation of the land, to pay, and was liable for the payment of the taxes on the land, not only for the year 1873, but for the taxes of the years 1874, 1875 and 1876. At the time of the levy and assessment of all these taxes, he was in possession and occupancy of the land, and had the use and benefits thereof from the spring of 1869, until sometime in May, 1877. We submit, then, that Shoup, under the quitclaim deed executed to him by Charles L. Flint, acquired no title to the land in controversy. All the title which Flint had was by virtue of the tax certificate that had been issued to Tyler and assigned to him, and upon which he had procured a tax deed to be is-

sued to himself. The acquisition of this tax title by Shoup, was under the circumstances only a compliance with his agreement "that he would regularly and seasonably pay all such taxes and assessments as should lawfully be imposed on such premises." To sustain such a title in Shoup would be to hold that he could violate the terms of his contract, and practice a fraud upon the owner of the land. He was in possession of the land at the time that the taxes were levied, at the time of the tax sale, and at the date of the execution of the tax deed. ( 7 Kas. 110, 121, *et seq.*, and cases cited ; 8 id. 90 ; see also 19 Wis. 446.) The principle of law is well settled, that a person in possession of lands, whose duty it is to pay the taxes at the time of the assessment, cannot permit the same to be sold for taxes, and acquire directly any title based upon a failure to pay such taxes. ( 22 Wis. 175 ; 24 id. 229 ; 31 id. 359 ; 27 Cal. 300 ; 36 id. 322.)

The purchase of the tax title by Shoup, whose duty it was to pay the taxes, operated as a payment only, and he acquired no rights or title to the land. ( 97 U. S. 181, and cases cited.)

The same rule applies as to a vendee as to a tenant. He cannot acquire a title adverse to his vendor by the purchase of the land at a tax sale, especially so when under obligation to pay taxes. ( 20 Kas. 639, 643.)

Shoup, having acquired no title by reason of the non-payment of the taxes, his quitclaim deed to Phillipi passed no title to him. ( 11 Johns. 91 ; 9 Cow. 13 ; 1 Paige Ch. 473.)

Where a person relies on a mere quitclaim of the interest which a party may have in property, he does so at his peril, and must see to it that there is an interest to convey. He is presumed to know what he is purchasing, and takes at his own risk. ( 16 Minn. 26, and cases cited ; 4 id. 282 ; 10 id. 141 ; 8 Kas. 597, *et seq.* ; 14 id. 148.)

The pretended notice of the expiration of the time for redeeming said lands, given by the county treasurer, is of no effect for a non-compliance with the law in force at that time. This notice is void for not stating the name of the person to whom the land was assessed. This is a prerequisite required

by the statute for the benefit of the land-owner, and no valid tax deed can be executed until this provision of the law has been complied with. (Gen. Stat. 1868, ch. 107, § 110; 7 Wend. 148; 16 id. 348, 550; 63 Ill. 341; 52 id. 43; 38 id. 440; 50 Barb. 639; Burroughs on Taxation, 314, 315, 316.) This is not a mere irregularity, but a vital provision of the law which should be strictly complied with before the land-owner can be divested of his title. (21 Wis. [star page 600], 607; 24 id. 664.)

It is not shown by any finding of fact, or by any evidence, that the county treasurer ever caused to be posted a list or notice of unredeemed lands in any public place, or any place in his county, or that he posted any such notice in his office. The failure to comply with this provision of the law is fatal. It was just as essential as the publication of the notice in a newspaper, and is by statute made a prerequisite. (Gen. Stat. 1868, ch. 107, § 110, latter part.)

As the record does not contain the evidence produced on the trial in the court below, and as no special finding was requested or given as to the fact whether any such notice was ever posted, as is required by the latter part of § 110, we submit that the general judgment of the court adjudging the tax deed void, and the claim of the title thereunder be held for naught, will be upheld by this court, upon the well-settled doctrine that errors are never to be presumed, and that in the absence of anything being shown in the record to the contrary, it is conclusively presumed that sufficient evidence was produced to sustain the judgment of the court below. (22 Wis. 175; 31 id. 359; 24 id. 229.)

There are very many questions of fact, errors, and fatal omissions, which might have been shown in the court below, to sustain the judgment and the third conclusion of law; and the well-settled principle of law is, that error will never be presumed, but must be affirmatively shown; and where the record is silent, no error will be presumed. It does not even appear affirmatively by the transcript annexed to the petition in error, that all the conclusions of fact or conclusions of law

made or found by the court below are contained in the record here. This court cannot say that the judgment of the district court in any respect, or any of its findings, is unsupported by evidence, as the record does not purport to contain *all* the evidence in the case. It is claimed that the third finding of fact is unsupported by the evidence, and is contrary to the evidence, as shown in the bill of exceptions, but how that fact might have appeared, had all the evidence been preserved, this court cannot say. ( 8 Kas. 38, 466; 15 id. 378.)

The opinion of the court was delivered by

HORTON, C. J.: The trial court adjudged that the railroad company was the owner in fee of the premises in controversy at the commencement of this action, but required the company to pay to Phillipi, taxes, interest and costs amounting to $367.28, before it should be let into possession. Both parties are dissatisfied with the judgment. Plaintiffs in error claim that the tax deed of June 26, 1877, vested in Charles L. Flint an absolute estate in fee to the land; that such title was transferred by Flint to John Shoup on January 18, 1878, and from Shoup to Phillipi on February 6, 1878. The defendant in error contends that John Shoup was under a duty to pay all the taxes; that his quitclaim deed to Phillipi passed no title, interest or lien; therefore, the order requiring the railroad company to pay taxes, interest and costs as a precedent condition to being let into possession, was wholly erroneous.

Our attention is first called to the second conclusion of law of the court, "that said John Shoup could not, on account of the relation in which he stood to the railroad company, acquire a valid tax deed on the land." This conclusion, we suppose, is intended to be based upon the following findings:

1. On September 5, 1871, the president of the United States of America executed and delivered to the said Central Branch Union Pacific railroad company, plaintiff, under and in accordance with the treaty concluded between the United States and the Kickapoo Indians on or about May 28, 1863, a patent for numerous tracts of land, including the

southeast quarter of section thirty-five, in township five, south, of range sixteen, east, in Jackson county, Kansas, and thereby conveyed said land to the plaintiff; and the same is still owned by the plaintiff, unless the title has been divested by the proceedings hereinafter mentioned.

2. On September 24, 1868, the defendant John Shoup entered into a contract in writing with the plaintiff, whereby the said John Shoup agreed to purchase, and the plaintiff agreed to sell, the west half of said quarter-section of land for $680, in nine annual payments, with interest thereon annually at the rate of ten per cent. per annum; and the said John Shoup covenanted in said contract with the plaintiff that he would regularly and seasonably pay all such taxes and assessments as should be lawfully imposed on said premises. Said contract was numbered 531. And on October 7, 1868, the said John Shoup entered into a contract in writing with the plaintiff, whereby the said John Shoup agreed to purchase, and the plaintiff agreed to sell, the east half of said quarter-section of land for $680, in nine annual payments, with interest thereon annually at the rate of ten per cent. per annum; and the said John Shoup covenanted in said contract that he would regularly and seasonably pay all such taxes and assessments as should be lawfully imposed on said premises. Said contract was numbered 555.

3. The said John Shoup entered into the actual possession and occupation of said tracts of land, together being the southeast quarter of section 35, in township 5, of range 16, in said Jackson county, under said contracts numbered 531 and 555 respectively, in the spring of the year 1869, and he so remained in possession and occupation of the said east half of said quarter-section under said contract number 555 until August 17, 1875, and he so remained in possession of the said west half of said quarter-section under said contract number 531 until May 17, 1877. At said dates respectively the said John Shoup, having paid only a small part of the purchase-money, but having made valuable improvements thereon, and being unable to make further payments, voluntarily surrendered said contracts and all future rights or benefits thereunder to the plaintiff, with the understanding that the plaintiff released him from making any further payments under said contracts, and from all future liability under or upon any of the covenants of said John Shoup contained in said contracts.

4. On the surrender of said contract No. 531 for the west

half of said quarter-section, on May 17, 1877, the said John Shoup entered into a contract in writing with the plaintiff for the lease of said west half for the term of eight months, which was afterward extended by agreement until February 1, 1878; but said lease contained no agreement as to payment of taxes, and the said John Shoup did not remove from said premises on surrender of said contract No. 531, May 17, 1877, but remained thereon under the provisions of said lease, until the expiration thereof; and he continued to occupy said land, together with his son, Winfield Shoup, defendant, until the commencement of this action.

5. The said John Shoup did not pay the taxes and assessments, nor any part thereof on said southeast quarter of said section 35, township 5, range 16, nor on any part thereof, for the years 1873, 1874, 1875, and 1876; nor for any of said years—neither did the plaintiff, nor any other person, company or corporation do so.

13. On June 26, 1877, said Charles L. Flint presented said tax certificate No. 145 to the county clerk of said county of Jackson, and said county clerk executed, signed, sealed, acknowledged and delivered a tax deed for said tract of land to the said Charles L. Flint. Said deed is in form as prescribed by the statute. And the same was filed for record, in the office of the register of deeds of said county of Jackson, on June 27, 1877, at eight o'clock A. M., and was duly recorded in book P, at page 542. The amount of the fee paid the county clerk for said deed was $1, and the fee for recording the same, paid by the said Charles L. Flint, was $1.25.

14. On January 18, 1878, the said Charles L. Flint executed, signed, acknowledged and delivered to the defendant, John Shoup, a quitclaim deed for said tract of land, and said deed was filed for record in the office of the register of deeds of said county of Jackson, February 8, 1878, at nine o'clock A. M., and duly recorded in book Q, at page 371.

15. On February 6, 1878, the said John Shoup, defendant, and Ann E. Shoup, his wife, executed, signed, acknowledged, and delivered to the defendant, Thomas H. Phillipi, a quitclaim deed for said tract of land, and said deed was filed for record in the office of the register of deeds for said county of Jackson, February 21, 1878, and duly recorded in book I, at page 373.

16. Afterward, on said 6th day of February, 1878, the said Thomas H. Phillipi let and leased said land by a written indenture for one year to the defendant, Winfield Shoup, a son

of the defendant, John Shoup, and the said Winfield Shoup
and John Shoup, defendants, were living together and occu-
pying said quarter-section of land at the time of commencing.
this action, and keeping the plaintiff out of the possession
thereof.

The argument of counsel for defendant in error upon these
findings, is, that the acquisition of the tax title, by John
Shoup from Flint, was only a compliance with the terms of
his written contract of purchase to regularly and seasonably
pay all the taxes and assessments as should be imposed law-
fully on the land; that the purchase of the tax title from
Flint, operated as a payment of the taxes only; that having
only redeemed the land from taxes by his purchase, his quit-
claim to Phillipi passed no title, or lien for taxes, or for any-
thing else.    This argument, although plausible, and having
some little foundation from the peculiar wording of the third
special finding of fact, cannot be upheld, in view of the ad-
mission made by the parties on the trial, viz.:

" That at the time of the surrender of each of said con-
tracts, numbered 555 and 531 respectively, and mentioned in
the third finding or conclusion of fact of the court herein, it
was mutually agreed and understood by and between the said
plaintiff (defendant in error) and the said John Shoup, that he
should relinquish all his claims in and to each of said tracts (of
land) under and by virtue of the said contracts respectively,
and all his improvements on the said premises; and in con-
sideration thereof, the said plaintiff at the time of such sur-
render of said contracts, released all its claims against the said
John Shoup, under and by virtue of the covenants on the
part of said John Shoup in said contracts and each of them
contained."

Under this admission, the railroad company had no claim
or right of action against Shoup at the date of the deed from
Flint to him, to wit, January 18, 1878, for any default from
his non-payment of the taxes, because prior to January,
1878, viz., on August 17, 1875, and on May 17, 1877, there
had been such settlements between the railroad company
and Shoup, that the company released all its claims against
him under and by virtue of the written contracts.    A per-

son under obligation to pay taxes cannot, upon the sale of such taxes, acquire a valid title founded upon his default, but where there is no duty or obligation to pay taxes there is no default. Even if default had occurred, the defaulting party may be relieved from such non-performance by express contract with the owner of the land, and thereafter he is not inhibited from procuring a tax title. When Shoup surrendered all his rights in the land, and gave up all his improvements to the railroad company, he was absolved from all obligation or duty, under the terms of settlement, from paying past or future taxes. The transactions between the parties about the purchase of the land and the payment of taxes had been closed up; and past, as well as future liability, ceased. The railroad company, under the settlements, assumed virtually the duty or obligation of Shoup to discharge the taxes for 1873, 1874, 1875 and 1876, and as on May 17, 1877, the land was still redeemable, and as the tax deed to Flint was not executed until June 26, 1877, the company had ample time to pay all back taxes, and prevent the issuance of a tax deed. After the release by the company to Shoup of all liability, he was not debarred by any relation under the written contracts from acquiring a valid tax title for the taxes set forth in the special findings; nor was his subsequent occupation of the land, as tenant or otherwise, any obstacle to his acquisition of such a title. (*Perley v. Taylor*, 21 Kas. 712; *Weischelbaum v. Curlett*, 20 Kas. 709.)

1. Taxes, relief from duty to pay; contract construed; valid tax deed.

We pass next to consider the alleged defects in the tax proceedings. The third conclusion of law of the court is, "that said tax deed is null and void, by reason of the defective and insufficient execution of the prerequisites to the execution of said tax deed." It is claimed that the following findings support this conclusion:

6. The assessor's roll for Whiting township (in which township said land is located) for the year 1873 was returned to, and filed in the office of the county clerk of Jackson county on June 21, 1873, and on said day the oath of the

assessor to his assessment roll was administered by E. D. Rose, county clerk, and the same was reduced to writing on one of the pages of said assessment roll, and was signed by Charley Shedd, but neither the word "assessor" nor any other official designation followed said signature, but it was stated in the body of the writing that said Charley Shedd was assessor of Whiting township. The jurat to said oath was signed by E. D. Rose as county clerk, but no official seal nor other seal was ever affixed thereto. On said assessor's roll the said quarter-section of land was assessed in the name of John Shoup as the owner thereof, and the land was designated and valued as follows: "John Shoup, owner. S. E. ¼ sec. 35, T. 5, R.16; 160 acres; 5½ per acre. Improvements 75. Total value 955." Neither the words dollars or cents, nor any abbreviations or characters denoting either, appear in said assessment roll relating to said land, but said assessor's roll was properly ruled into appropriate columns, and the assessed value appears in the appropriate column.

7. The tax roll of said Jackson county for the year 1873 shows the assessment of said quarter-section of land in the name of J. Shoup, and said name is set opposite to and in the same line with the description of said land, to wit: The S. E. ¼ sec. 35, T. 5, R.16; and the valuation thereof, $955; and on said tax roll the said J. Shoup appears as the owner of said quarter-section of land; and the total amount of taxes charged against said land on said roll is $46.77, besides penalty, $4.68, making a grand total of $51.45.

8. The county treasurer caused to be published in due time a notice of the tax levy for the year 1873, and an oath was taken by the publisher of the Holton *Express* to the due publication of said notice, and the same was reduced to writing and signed by Frank A. Root as such publisher, and the jurat was signed by E. D. Rose as county clerk, but no seal of office or other seal was ever attached thereto, and the same was duly filed in the office of the county clerk of said county.

9. The taxes on said quarter-section of land not being paid for the year 1873, the county treasurer issued his notice, on March 3, 1874, that the same would be sold on the first Tuesday of May, 1874. Said notice was accompanied by a schedule describing the lands by numbers and subdivisions, but no name was set opposite the said S. E. ¼ sec. 35, T. 5, R. 16, showing the ownership thereof as on the tax roll, and it could not be ascertained from said notice who was the owner of said land, nor in whose name it was assessed. Said

notice was published in the Holton *Express*, March 6, March 13, March 20, and March 27, 1874, and an oath was taken by the publisher of said newspaper, and the same was reduced to writing and signed by Frank A. Root as such publisher, and the jurat was signed by E. D. Rose as county clerk, but no seal of office or other seal was ever attached thereto.

10. In pursuance of said tax-sale notice the county treasurer offered said land for sale on May 6, 1874, and said quarter-section of land was purchased by John E. Tyler for $51.80. But the purchaser's name, as stated in the tax-sale record made and kept by the county treasurer, and also in the county clerk's duplicate, was and is J. E. Tyler. And the tax-sale book so made by the county treasurer did not and does not show the ownership of said quarter-section of land, nor the person's name to whom assessed, but the column designated in said book for the name of the owner or owners, if known, is left entirely blank, and the duplicate thereof in the office of the county clerk is in all respects the same as said original book made and kept by the county treasurer.

11. At the time of said sale a certificate was issued to said John E. Tyler, in due form, and numbered 145, and afterward he paid taxes on said land, and had the same indorsed on said certificate, as follows: January 10, 1875, for taxes of 1874, $26.10; February 10, 1876, for taxes of 1875, $29.88; January 27, 1877, for taxes of 1876, $20.70; and on May 28, 1877, he indorsed on said certificate the words "Assigned to Charles L. Flint, of Suffolk county, Mass., May 28, 1877." And he then and there signed his name thereto as "John E. Tyler." But said assignment was not and never has been entered on the said county treasurer's sale book, and the clerk's duplicate thereof, nor on either of them; but the column prepared, and designated for the purpose of showing assignments, is left entirely blank, both on said tax-sale book and the duplicate thereof.

12. On December 4, 1876, the county treasurer issued his notice in substance and to the effect that the time for redemption of the lands designated in the schedule attached to the notice, from the sale of May, 1874, for the delinquent taxes of 1873, would expire on May 8, 1877, and if not redeemed on or before said day, then deeds would be issued to the purchasers. Said notice was published December 7, December 14, December 21, and December 28, 1876, and not thereafter. The said quarter-section was described in said notice as "S.E. qr. sec. 35, township 5, range 16," and as being in Jackson

county, Kansas, and the amount specified in said notice as due thereon at expiration of redemption was $218.35. But said notice did not state in any manner the name of the person to whom said land was assessed, and neither the name of John Shoup, nor J. Shoup, nor any other name, was set opposite thereto nor used in connection therewith, and it could not be ascertained from said notice who was the owner of said tract of land, nor to whom the same had been assessed, although the name of John Shoup appeared on the assessor's roll as the owner of said land at the time of the assessment thereof in 1873, and the name of J. Shoup appeared on the tax roll for 1873 as the owner of said land, and said assessor's roll being at the time of said notice and advertisement in the county clerk's office, and said tax roll being at said time in the county treasurer's office, as public records.

The defects pointed out in the findings we deem mere irregularities or immaterial omissions, and under § 113, ch. 107, Gen. Stat. 1868, (§ 139, ch. 107, p. 967, Comp. Laws 1879,) not sufficient to invalidate the tax proceedings, or the title conveyed by the tax deed. The omission of the official title of the assessor after his signature to the oath as to the correctness of his assessment and valuation of the real estate, and the absence of the official seal of the county clerk to the jurats to the oath of the assessor upon his return, and to the affidavits of the publication of the tax levy and tax sale, are clearly such mere defects as are intended to be covered by the curative act above referred to, that no argument is needed to support our conclusion. (*Townsen v. Wilson*, 9 Barr [Penn.], 270.)

2. Irregularities, not invalidating tax proceedings.

The only serious question concerning the alleged defects arises over the omission of the name of the person to whom the land was assessed in the notices of sale and redemption. The tax roll shows the assessment in the name of J. Shoup. The statute in force at the time of the publication of the notice of sale provided that the county treasurer should cause to be published for four consecutive weeks prior to the day of sale a list of all lands and town lots subject to sale, describing such land and town lots as the same are described on the tax roll, with an accompanying notice, stating

36—24 KAS.

that so much of each tract of land, described in the list, as might be necessary for that purpose, would, on the first Tuesday of May next thereafter, and the next succeeding days, be sold by him at public auction, at his office, for the taxes and charges thereon. (Gen. Stat. 1868, ch. 107, §§ 81, 82.)

The statute relating to redemption notice in force in 1877, and still in force, prescribes: "The county treasurer, at least four months before the expiration of the time limited for redeeming lands as aforesaid, shall cause to be published in some paper published in, or of general circulation in his county, once a week for four successive weeks, a list of all unredeemed land and town lots, describing each tract or lot as the same was described on the tax roll, stating the name of the person to whom assessed, if any, and the amount of taxes charged, and interest, calculated to the last day of redemption, due on each parcel, together with a notice that unless such lands or lots be redeemed on or before the days limited therefor, specifying the same, they will be conveyed to the purchasers." (Gen. Stat. 1868, ch. 107, § 110; Comp. Laws 1879, ch. 107, p. 965, § 137.)

These provisions regarding the description of land by the addition of the name of the person to whom assessed, are qualified to some extent by other sections of the statute. Thus § 36, ch. 107, Gen. Stat. 1868, (§ 49, ch. 107, Comp. Laws 1879,) only requires land assessed, or entered upon the assessment roll, to have the name of the owner inserted, when known.

Section 92, Gen. Stat. 1868, (§ 118, ch. 107, Comp. Laws 1879,) provides: "When any lands or town lots are offered for sale for any taxes, it shall not be necessary to sell it as the property of any person, or persons; and no sale of any land or town lot for taxes shall be considered invalid, on account of its having been charged on the roll in any other name than that of the rightful owner; but such land must be in other respects sufficiently described on the tax roll, and the taxes for which it is sold be due and unpaid at the time of such sale."

This section is supplemented by said § 113 of the General. Statutes of 1868, (§ 139, Comp. Laws 1879,) that "no irregularity in the assessment roll, nor omission from the same, nor mere irregularities of any kind in any of the proceedings, shall invalidate any such proceeding, or the title conveyed by the tax deed."

From these sections, we deduce these results, that the assessors are expected to ascertain the names of the owners of the lands assessed, and to set opposite each tract or lot on the assessment roll, the name of the owner; but when the assessor, having jurisdiction, and proceeding irregularly in the exercise of it, fails to enter any name, or enters another name than that of the rightful owner, the assessment is not a nullity; further, that a tax sale is not invalid, if the land is sold as the property of a person other than the true owner, or if sold without regard to ownership; and, finally, that as in the assessment roll and in the tax sale the name of the owner of the land is not essential to the validity of the proceedings, the name of such owner, or the name of the person to whom land is assessed, is not absolutely essential to the sale and redemption notices; therefore its omission is only an irregularity. Clearly, section 92 renders the omission in the tax-sale notice a matter of form, if the description is otherwise sufficient; and if the name is omitted in all the assessment and sale proceedings, without injurious effect, it is hardly reasona-

3. Tax deed, valid; tax sale notice.

ble to hold, that failure to insert such name in the redemption notice renders the tax deed void, because the officer giving such notice can only obtain such name from the assessment or tax books. If it is not there, (and some of the sections quoted were evidently adopted upon the theory that the assessor might not always be able to ascertain the owner — that he might assess the land to the wrong person, or by mistake or neglect omit it altogether,) no name can be inserted in the redemption notice.

An examination of the cases in the Illinois and New York reports, to which our attention has been called by counsel, does not change our opinion. In the former state, the duty

of giving notice devolves upon the tax purchaser, before he is entitled to his deed, by a provision of the state constitution. Of course, under such a constitutional direction, a strict compliance with all the obligations devolving upon the tax purchaser is requisite to render a tax deed valid. In New York, the statutes are different in many respects from ours, and we fail to find any curative act in force in that state like § 139, ch. 107, Comp. Laws 1879. In Wisconsin, the supreme court hold the redemption notice is merely directory, and its total omission not effective against the tax purchaser. (*Robinson v. Howe,* 13 Wis. 341; *Wright v. Sperry,* 21 Wis. 331; *Wright v. Sperry,* 25 Wis. 617.) We do not go so far. The writer is of the opinion that the failure to comply with the substantial requirements of the redemption notice would be fatal to a tax deed; that this notice, though subsequent in point of time to the tax sale is, nevertheless, regarded in judgment of law as precedent to the acquisition of the title. (Blackwell on Tax Titles, [4th ed.,] 343, 344.) But it is unnecessary to pursue this line of discussion. In this case, the notice was not wholly omitted; in the notice occurred only an omission or irregularity, which, under the statute, was not of the substance of the notice, and therefore not fatal.

Counsel for defendant in error suggest toward the close of their argument that, as many errors and fatal omissions in the tax proceedings might have been shown in the court below, this court ought to sustain the judgment of the trial court as to the invalidity of the tax deed, upon the well-settled principle of law, that error will never be presumed, and that everything necessary to support the conclusion of law that the tax deed is null and void will be considered as having been found by the court in its general judgment. Counsel are here in error, in view of the condition of the record. All the parties requested the court to make special findings of fact; such findings were made; the court, among other findings, found that the tax deed was in due form; then certain defects or omissions in the tax proceedings are set forth at length; the conclusions of law are presumed to be based

upon the special findings of fact and the general judgment
follows the conclusion of law. As the tax deed is *prima facie*
evidence of the regularity of all proceedings, from the valua-
tion of the land by the assessor, inclusive, up to the execution
of such deed, the only defects or omissions we can consider
or suppose were proved, are those contained in the special
findings. Those defects or omissions are not sufficient to
destroy the deed. All the interest and title possessed by
John Shoup under the deed were transferred and conveyed
to Phillipi. The first, second and third conclusions of law,
being inconsistent with the special findings, must fall; and as
the general judgment is based upon those conclusions, it also
must fall. The third conclusion of fact, not being as full and
definite as the admissions of the parties on which it was
founded, and having been duly excepted to by the plaintiffs
in error, and we being in doubt as to ordering a final judg-
ment in their favor in the absence of the important admission
of the parties, (contained in the bill of exceptions,) from the
special findings of fact, feel compelled to remand the case for
a new trial. If no other defects or omissions are shown in
the tax proceedings on another hearing, than those pointed
out in the special findings of fact, the tax deed cannot be de-
creed void by reason of the defective and insufficient execu-
tion of the prerequisites thereto.

The judgment of the district court will be reversed, and
the case remanded with direction to proceed in accordance
with the views herein expressed.

All the Justices concurring.