## F. KOTHMAN v. E. H. SKAGGS, *et al.*

JUDGMENT AND LIEN, *Nature of; Revivor; Limitation.* On January 5, 1874, K. owned a promissory note, given by M. to K., which note was then due. On that day, K. commenced an action against M., on the note, and attached certain lands belonging to M. On May 29, 1874, K. obtained a judgment in his favor against M. for the amount of the note, and at the same time obtained an order that the attached property should be sold to satisfy the judgment, with interest and costs. On October 1, 1874, an execution was issued on the judgment, and the attached property was levied on and offered for sale, but was not sold, for the want of bidders. On December 10, 1874, M. died; and on May 7, 1875, H. was duly appointed and qualified as administrator of M.'s estate. H. gave due notice of his appointment and qualification. · On August 17, 1875, S. commenced this present action against K. and others, on a promissory note and mortgage given by M. in his lifetime to S. The mortgage covered the same lands which K. had previously attached. The administrator, the widow and the heirs of M., and all persons interested in the estate of M., and in the subject-matter of this action, were made parties. On November 8, 1875, K. answered, setting up, by way of cross-petition and counter-claim, all the facts constituting his claim against the estate of M., and asking, by way of affirmative relief, that his judgment and judgment lien should be enforced as against the lands in controversy. A trial was had in March, 1881, before the court, without a jury; and in April, 1881, the court decided the case, making special findings and conclusions of fact and of law; and on April 30, 1881, rendered judgment upon such findings and conclusions. The judgment was against K.'s claim, holding that he had no lien upon the lands in controversy. *Held,* That the judgment is erroneous; and this notwithstanding the fact that K.'s judgment was never formally revived under article 19 of the civil code, and was never established in the probate court, and was never attempted to be revived or established or enforced against the administrator of M. within one year after his appointment and qualification in any manner other than by setting it up in the present action in K.'s answer; and that no person except K. has at any time consented that K.'s judgment or claim should be revived or established or enforced in any manner or in any court; and notwithstanding the supposed limitations contained in the following statutes, to wit: Civil code, §§ 18, 433, in connection with 439, 455, and 468; executors and administrators act, § 81, in connection with § 80, and § 106. Although K.'s judgment, after the death of M. and prior to K.'s setting it up in his answer in this case, was not a judgment against any living person, yet it was not a nullity. It was still a judgment in a limited sense — a judgment in abeyance, a dormant judgment, and one that might at any

time within one year from M.'s death, or from the appointment of his administrator, be revived against the representatives and successor of the deceased; and this without their consent; and when so revived, it would be revived with all its attributes, with all its force and efficacy, and with everything which it possessed on the day prior to the decease of the judgment debtor; and such judgment, while so subsisting, and within one year after the judgment debtor's decease, might also, without any formal revivor, be used as the foundation for an action against the representatives or the successor of the deceased; or it might be used as the foundation for affirmative relief in any proper action in which K. might be a defendant; and, if used as the foundation for an action, or as the foundation for affirmative relief, before being barred or impaired by any statute of limitation, there would be no necessity for any formal revivor under article 19 of the civil code; for such use would answer substantially the same purpose as a formal revivor; and no statute of limitations would run against the judgment or the judgment lien pending the litigation so as to bar or impair either the judgment or the judgment lien in any respect whatever. It is a universally recognized principle, that statutes of limitation do not run against any claim or demand during any portion of the time while a suit is pending for the enforcement of such claim or demand.

*Error from Leavenworth District Court.*

ACTION brought by *E. H. Skaggs* against *E. J. Myers* and others, to recover the sum of $16,000 with interest, alleged to be due on eight promissory notes given by J. J. Myers to the plaintiff, and to foreclose a mortgage on certain real estate given by the said Myers and wife to secure the payment of the notes. Trial by the court, at the December Term, 1881, when the court made the following findings of fact and conclusions of law, to wit:

CONCLUSIONS OF FACT.

"*First.* That the plaintiff E. H. Skaggs has no interest whatever in this suit.

"*Second.* That the notes and mortgage set up in the answer of E. M. Skaggs in this suit are and were each of them wholly without consideration, fraudulent, null and void, and were made, executed and delivered for the purpose and with the intent to hinder, delay and defraud the creditors of John J. Myers.

"*Third.* The court finds that the defendant F. Kothman, on the 5th day of January, 1874, commenced an action in

this court in attachment against John J. Myers in his lifetime, on a certain promissory note for $10,301.32, dated June 4, 1873, made by said J. J. Myers in favor of F. Kothman; that under proper attachment proceedings in said action the same lands in controversy in this action were attached by said F. Kothman on the 7th day of January, 1874.

"*Fourth.* That thereafter, on the 13th day of February, 1874, the defendant J. J. Myers appeared in said suit of Kothman by T. A. Hurd, his attorney, and filed his answer in said action.

"*Fifth.* That on the 29th day of May, 1874, by consideration of this court, said F. Kothman recovered judgment against said J. J. Myers in his lifetime in said action for $10,751.95, with interest thereon from that date at the rate of 10 per cent. per annum, and an order decreeing that the above-described premises be sold to satisfy said judgment for $10,751.95 in favor of said Kothman.

"*Sixth.* That on the 1st day of October, 1874, said F. Kothman caused a special execution and order of sale to issue in said action to enforce said decree in his favor to sell said lands; that said lands under said special execution were duly appraised, advertised and offered for sale by the sheriff of Leavenworth county, and were not sold, for want of bidders, as shown by said sheriff's return on said special execution.

"*Seventh.* That this action of Skaggs *v.* Myers was instituted on the 17th day of August, 1875, and said F. Kothman filed his answer and cross-demand on the 8th day of November, 1875.

"*Eighth.* That on the 27th day of September, 1876, an execution for costs in said action of Kothman *v.* Myers was issued against the property of the defendant, and returned unsatisfied.

"*Ninth.* That on the 12th day of March, 1881, this court revived said action of F. Kothman against E. J. Myers, Hettie V. Myers, George Myers, John J. Myers, Abram E. Myers, Robert E. L. Myers, Eliza J. Myers, and Eva B. Myers, sole heirs of said J. J. Myers, deceased, and at the same time the court overruled the motion of said Kothman to revive said judgment against Herman Markson as administrator of the estate of J. J. Myers, deceased, which motion to revive was filed on January 4, 1881.

"*Tenth.* The said John J. Myers was a resident of and died in Texas on the 10th day of December, 1874, and Herman Markson, one of the defendants in this case, was duly

appointed administrator of the estate of said John J. Myers, deceased, on the 7th day of May, 1875, by the probate court of Leavenworth county, Kansas, and he thereupon duly qualified and has ever since been acting as such administrator.

"*Eleventh.* That this action was commenced on the 17th day of August, 1875, and the said F. Kothman filed his answer herein on the 8th day of November, 1875; but said F. Kothman has never presented his demand against the estate of John J. Myers, deceased, to the probate court of Leavenworth county, Kansas, nor has he filed an abstract of said judgment in the probate court, nor has he attempted to establish any demand against the estate of said John J. Myers in said probate court.

"*Twelfth.* That the defendant O. O. Searcy was a creditor of said John J. Myers at the time of his death, and on the 25th day of August, 1875, after due notice to the administrator of said estate, his demand against said estate was duly and legally allowed by the probate court of Leavenworth county, Kansas, to the amount of $371.90, with interest thereon at the rate of seven (7) per cent. per annum from that date until paid, and was duly assigned to the debts of the fifth class against said estate, and that no part of the same has since been paid.

"*Thirteenth.* That the defendant Mark A. Withers was a creditor of said John J. Myers at the time of his death, and that on the 17th day of September, 1875, after due notice to the administrator of said estate, his demand against said estate was duly and legally allowed by the probate court of Leavenworth county, Kansas, to the amount of $7,353.60, with interest thereon at the rate of seven per cent. per annum from that date until paid, and was duly assigned to debts of the fifth class against said estate, and that no part of the same has been paid.

"*Fourteenth.* The defendant F. W. Murray was a creditor of said John J. Myers at the time of his death, and that on the 17th day of September, 1875, after due notice to the administrator of said estate, his demand against said estate was duly and legally allowed by the probate court of Leavenworth county, Kansas, to the amount of $6,917.53, with interest thereon at the rate of ten per cent. per annum from that date until paid, and was duly assigned to debts of the fifth class against said estate, and that no part of the same has since been paid.

"*Fifteenth.* That the defendant F. W. Murray was a cred-

itor of said John J. Myers at the time of his death, and that
on the 17th day of September, 1875, after due notice to the
administrator of said estate, his demand against said estate
was duly and legally allowed by the probate court of Leav-
enworth county, Kansas, to the amount of $1,230.30, with
interest thereon at the rate of ten per cent. per annum from
that date until paid, and was duly assigned to debts of the
fifth class against said estate, and that no part of the same
has since been paid.

"*Sixteenth.* That the defendants James F. Ellison and
John O. Dewees were creditors of said John J. Myers at
the time of his death, and that on the 25th day of August,
1875, after due notice to the said administrator of the estate,
their demands against said estate were duly and legally
allowed by the probate court of Leavenworth county, Kan-
sas, to the amount of $1,810.76, with interest thereon at the
rate of seven per cent. per annum from that time until paid,
and were duly assigned to debts of the fifth class against said
estate, and that no part of the same has since been paid.

"*Seventeenth.* That the defendant Archibald J. Larimore
was a creditor of the said John J. Myers at the time of his
death, and that on the 17th day of September, 1875, after
due notice to the administrator of said estate, his demand
against said estate was duly and legally allowed by the pro-
bate court of Leavenworth county, Kansas, to the amount of
$3,439.25, with interest thereon at the rate of ten per cent.
per annum from that date until paid, and was duly assigned
to debts of the fifth class against said estate, and that no part
of the same has since been paid.

"*Eighteenth.* That the defendants Jonathan Nix and Leon-
idas J. Story were creditors of the said John J. Myers at
the time of his death, and that on the 25th day of August,
after due notice to the administrator of said estate, their de-
mand against said estate was duly and legally allowed by the
probate court of Leavenworth county, Kansas, to the amount
of $128.20, with interest thereon at the rate of ten per cent.
per annum from that date until paid, and was duly assigned
to debts of the fifth class against said estate, and that no part
of the same has since been paid.

"*Nineteenth.* That the defendants Jonathan Nix, Leonidas
J. Story and A. S. Walker were creditors of John J. Myers
at the time of his death, and that on the 25th day of August,
1875, after due notice to the administrator of said estate,
their demands against said estate were duly and legally

allowed by the probate court of Leavenworth county, Kansas, to the amount of $409.50, with interest thereon at the rate of ten per cent. per annum from that date until paid, and were duly assigned to the debts of the fifth class against said estate, and that no part of the same has since been paid.

"*Twentieth.* That all of the parties plaintiff and defendant are non-residents of the state of Kansas, except the defendant Herman Markson.

"*Twenty-first.* That the entire property of the said John J. Myers, deceased, in the state of Kansas, that has come to the hands of the administrator of said estate, or which can be found in this state, consists of the real estate mentioned in the petition in this case and the rents received therefrom by the administrator, and a small note of some fifty or sixty dollars; that the administrator has now in his hands, after collecting said note and rents, about sixteen hundred dollars, subject to charges and expenses of administration, court fees, etc.; that the real estate mentioned in said petition is worth now about twelve thousand dollars, and that the taxes, interest and penalties thereon now due upon said real estate amount to about twenty-five hundred dollars."

CONCLUSIONS OF LAW.

"*First.* That the plaintiff cannot recover in this action, and has no claim or demand against the estate of said J. J. Myers."

[To which the plaintiff and defendant Skaggs duly excepted.]

"*Second.* That the defendant Ewing M. Skaggs cannot recover in this action, and has no claim or demand on account of the notes and mortgage set up in his answer against the estate of said John J. Myers, deceased, and that said mortgage is no lien upon the real estate therein.

"*Third.* That the defendant F. Kotham cannot recover in this action, and has no claim or demand on account of the judgment set up in his answer against the estate of said John J. Myers, deceased, nor is said judgment any lien on the real estate owned by said decedent at the time of his death.

"*Fourth.* The plaintiff E. H. Skaggs and the defendant Ewing M. Skaggs should pay the costs of this suit."

Judgment was rendered in accordance with the above conclusions.

All the other facts necessary for a proper understanding of

this case will be found in the opinion of the court. The defendant *Kothman* brings the case here.

*H. T. Green*, for plaintiff in error.

*Wm. McNeill Clough*, for defendant in error Markson.

The opinion of the court was delivered by

VALENTINE, J.: On August 17, 1875, E. H. Skaggs commenced an action in the district court of Leavenworth county against E. J. Myers, Hettie V. Myers, George Myers, John J. Myers, Abram E. Myers, Robert E. L. Myers, Eva B. Myers, and Herman Markson, administrator of the estate. of J. J. Myers, deceased, and F. Kothman; and afterward, Ewing M. Skaggs, O. O. Searcy, James F. Ellison and John O. Dewees (partners as Ellison & Dewees), F. W. Murray, Jonathan Nix and Leonidas J. Story (partners as Nix & Story), Mark A. Withers, and Archibald J. Larimore, were made parties defendant. The action was to recover the sum of $16,000 with interest, alleged to be due on eight promissory notes given by J. J. Myers, in his lifetime, to the plaintiff E. H. Skaggs, and to foreclose a mortgage on certain real estate, given by said Myers and wife to the plaintiff to secure the payment of said promissory notes. The defendants in this case included the widow, the heirs, the administrator, and the creditors of J. J. Myers, deceased, and all other persons claiming to have any interest in the subject-matter of the controversy. The several defendants filed answers to the plaintiff's petition, the most of them setting up new matter by way of cross-petition, and asking affirmative relief. Proper replies were filed to these answers. The case was tried by the court below without a jury, and special findings and conclusions of fact and of law were made by the court. And upon these findings and conclusions, the court below rendered judgment against the affirmative claims of all the parties, and simply rendered a judgment against the two Skaggses for costs. The defendant Kothman duly excepted to all the findings and conclusions, and also moved for a new trial, which

motion was overruled, and now, as plaintiff in error, brings the case to this court and asks for a reversal of the judgment of the court below, so far as it affects his claim.

It appears from the pleadings, the evidence and the findings of the court below, that on January 5, 1874, and prior thereto, F. Kothman owned a promissory note given by J. J. Myers to Kothman, dated June 4th, 1873, for the sum of $10,301.32, which note was then due. On that day, to wit, January 5, 1874, Kothman commenced an action against J. J. Myers on said promissory note, and attached all the lands which are now in controversy in this action; and on May 29, 1874, obtained a judgment in his favor and against Myers for the sum of $10,751.95, and at the same time, and in connection with such judgment, obtained an order that the attached property should be sold to satisfy such judgment, with interest and costs. On October 1, 1874, an execution was issued on this judgment and the property in controversy was levied on and offered for sale; but was not sold, for the want of bidders. On December 10, 1874, J. J. Myers died; and on May 7, 1875, Herman Markson was duly appointed and qualified as administrator of Myers's estate. On May 8, 1875, and subsequently for three weeks, Markson gave due notice, by publication in a newspaper, of his appointment and qualification as administrator of such estate. On August 17, 1875, E. H. Skaggs commenced this present action against Kothman and others, as before stated. On November 8, 1875, Kothman answered, setting up, by way of cross-petition and counter-claim, all the facts constituting his claim against the estate of J. J. Myers, deceased; and asking by way of affirmative relief, that his judgment and judgment lien should be enforced as against the lands in controversy. On September 27, 1876, another execution was issued, in the case of Kothman v. Myers, and was returned unsatisfied. On March 9, 1881, the trial in this present case was commenced. On March 12, 1881, the judgment in the case of Kothman v. Myers was revived against the widow and the heirs of J. J. Myers, deceased; but it was not revived against Markson,

the administrator. On April 9, 1881, the court below made its findings and conclusions of fact and of law in this present case, and on April 30, 1881, rendered judgment upon such findings and conclusions. The judgment was against Kothman's claim, as before stated. Was this judgment correct, or was it erroneous? In other words, has the defendant Kothman a paramount lien upon the property in controversy, which he can enforce in this present action as against the widow, the heirs, the administrator, and the general creditors of the estate of J. J. Myers, deceased? This is the only question in the case.

The court below, in effect if not in words, found that no person had any specific lien upon the property in controversy, and we think that there is no question as to the correctness of this finding, except as to Kothman; and the only question in the case is, whether Kothman had any such specific lien, or not. That Kothman once had a lien on the property, paramount to the claims of all other persons, we think must be admitted; but the question arises, Has he lost this lien by his own *laches*, or from any other cause? About January 5, 1874, he obtained an attachment lien upon the property; on May 29, 1874, he obtained a judgment lien thereon; and about October 1, 1874, he obtained an execution lien thereon; and these liens were at the time paramount to any interest or lien of any other person. Now has he, for any reason, lost all these liens? The parties adverse to Kothman claim that he has; and this claim, as we understand it, is founded upon the ground that Kothman, by his own *laches*, in not properly prosecuting his claim, has allowed certain statutes of limitations to intervene, and not only to destroy his lien, but also to bar all his right to any relief as against the estate of J. J. Myers, deceased. The only statutes of limitations which can possibly be urged as barring or impairing Kothman's right to relief, are the following: Section 468 of the civil code; § 433, in connection with § 439 of the civil code; § 81, in connection with § 80, of the executors and administrators act;

section 106 of the executors and administrators act; and § 18 and § 445 of the civil code.

Now we do not think that any one of these statutes of limitations has so operated as to bar, or even impair, any right possessed by Kothman; and this for the reason, universally recognized, that statutes of limitations do not run against any claim or demand during any portion of the time while a suit is pending for the enforcement of such claim or demand. The rights of parties, so far as the statutes of limitations are concerned, are always to be determined, not as of the date of the trial of the case, or of the rendering of the judgment in the case, but must be determined as of the date when those rights were first set forth for adjudication in the pleading of the party who claims to possess such rights.

For the present we shall consider that the plaintiff's judgment was a valid and subsisting claim against the estate of J. J. Myers, deceased, and also was a valid and subsisting lien upon the property in controversy at the time when the defendant filed his answer in the present case. Also, for the present, we shall consider that Kothman had a right to set forth his claim in such answer, and to prosecute and enforce the same in the present action. We shall have more to say, however, with reference to these matters, hereafter.

Perhaps it is unnecessary to say anything further with reference to any of these statutes of limitations; but still it would be proper to mention some of them more specifically. As to § 468 of the civil code, we think it has no room for operation in this action, for an execution was issued and levied upon the property in controversy, within less than one year after the rendition of the judgment, which wholly prevented said § 468 from so operating as to destroy, or even to impair in any manner or degree, any of the force or efficacy of Kothman's judgment, or his judgment lien. Neither do we think that § 433 in connection with § 439, of the civil code, can have the effect to impair any right of Kothman. These sections are the ones which limit the time to one year, within

which the judgment creditor can revive his judgment, except where the representatives or successors of the deceased consent that the judgment may be revived. (*Scroggs v. Tutt,* 23 Kas. 182.) Now the only ground upon which it can be claimed that these sections necessarily operate to bar the plaintiff's right to enforce his judgment and judgment lien in this action, is that the present proceeding cannot take the place of, or be a substitute for, the ordinary proceeding to revive a judgment under article 19 of the civil code, which article includes said §§ 433 and 439. We do not think that this ground is tenable. The proceeding in the present case is much more formal than the ordinary proceeding to revive a judgment, and whenever any difficult question arises as to whether the judgment, or any portion thereof, should be revived or not, justice would be much more likely to be done in a proceeding like the present than under the ordinary revivor proceeding; and there is no substantial right or privilege which the representative or the survivor of the deceased person might avail himself of under the ordinary revivor proceeding, which he could not also avail himself of and insist upon in the present proceeding. The present proceeding, as instituted by Kothman's answer, is substantially a proceeding in equity to revive a judgment against the administrator, the widow, the heirs, the creditors, and every other person interested in the estate of J. J. Myers, deceased, to the extent that Kothman may enforce such judgment against the property on which the judgment was a lien, by selling the property and using the proceeds of the sale for the satisfaction of the judgment, etc., in the same manner and to the same extent as the same might have been done on the day preceding Myers's death. If there is any reason why this judgment, should not be revived and enforced by a sale of the property in controversy, etc., any person having any adverse interest to Kothman may show it in the present proceeding as fully and completely as he could in the ordinary revivor proceeding. We think the present proceeding may be maintained, and that it is not barred in any respect by said §§ 433 and

439 of the civil code. It fully and completely answers every purpose for which an ordinary revivor proceeding might be instituted. Neither do we think that any right of Kothman's has been impaired by reason of the provisions of §81, in connection with §80, of the executors and administrators act. Any demand against an estate is legally and properly exhibited against the estate by the commencement of an action against the administrator to enforce such demand. (Sec. 83 of the Executors and Administrators Act.) And the filing of an answer, setting up new matter, by way of cross-petition, and asking for affirmative relief, is the same as the commencement of an action for such affirmative relief. (Sec. 94 of the Civil Code; *Kimball v. Connor*, 3 Kas. 415.)

We do not think that it is necessary to say anything with reference to §106 of the executors and administrators act, or with reference to §18 of the civil code. These sections clearly do not bar or impair any right of Kothman's. Sec. 445 of the civil code provides that a judgment shall become dormant in five years after the last execution has been issued. Now we do not think that this section can have the force or effect to bar any right of Kothman's, for the reason that Kothman's answer was filed in much less time than five years after the last valid execution was issued in the case. (*Dempsey v. Bush*, 18 Ohio St. 376.) The issuing of an execution in a case is simply an attempt to enforce the judgment, and such is precisely the object of the present proceeding; and under the circumstances of this case the present proceeding is a much more efficient remedy than the issuing of an execution. Indeed, as appears from the facts of this case, the issuing of an execution was not a sufficient remedy at all, for while so many conflicting claims existed against the property, no person would bid upon the property, and therefore the property could not be sold at sheriff's sale. When all these conflicting claims are settled, as they must be in this case, and the property is then offered for sale, it can undoubtedly be sold, and be sold for a fair and adequate price.

Perhaps we might here properly close this opinion; but

we think it would also be proper to make some further statements with reference to the nature and character of Kothman's claim against the estate of J. J. Myers, deceased. On December 10, 1874, just prior to Myers's death, Kothman's judgment against Myers was a valid and subsisting judgment, and was a valid and subsisting lien upon the property in controversy. On that day Myers died. The judgment then ceased to be a judgment against any living person, but it did not become a nullity: it was still a judgment in a limited sense. It was a judgment in abeyance, a dormant judgment, and one that might at any time within one year from Myers's death, or from the appointment of his administrator, be revived against the representatives or successor of the deceased; and this without their consent. And it might also be so revived at any subsequent time, with the consent of such representatives and successor; and when it should be revived, it would be revived with all its attributes, with all its force and efficacy, and indeed with everything which it possessed on the day prior to the decease of the judgment debtor. (*Halsey v. Van Vliet,* 27 Kas. 476, 479.) The judgment might also, without any final revivor, be used as the foundation of an action against the representatives or the successor of the deceased. (*Scroggs v. Tutt,* 23 Kas. 181, 189, 190; *Case v. Huey,* 26 Kas. 558.) And if it could be used as a cause of action when the owner of the same is the plaintiff, it might also be used in any proper case as a cause of action, by setting it forth in the answer when the owner thereof is the defendant. (Civil Code, § 94.) It might also be exhibited to the administrator and established in the ordinary way in the probate court, the same as any other demand against the estate; or it might be enforced by an ordinary action in any court of competent jurisdiction, the same as any other demand could be. In the present case, the judgment was not revived against the administrator in any manner, nor was it established in the probate court, nor was it attempted to be revived or established or enforced against the administrator within one year after his appointment and qualification in any manner other than by setting it up in the

2—29 KAS.

present case in Kothman's answer; in which case, as we have before stated, the administrator and all other persons interested in the estate or in the subject-matter of the action, were made parties. And no person except Kothman has at any time consented that Kothman's judgment or claim should be revived or established or enforced in any manner or in any court. Under these circumstances, may Kothman's judgment be established or enforced in this present action? We know of no sufficient reason why it may not be so established and enforced. It must be remembered that when Kothman filed his answer, his judgment was valid and subsisting, and had lost nothing of its original force or efficacy, except what it had lost by reason of the death of J. J. Myers. Kothman still had the power to revive his judgment against the administrator and heirs, and, indeed, against every representative or successor of the deceased. No statute of limitations of any kind had then run against it to bar it or to impair its force or efficacy in the slightest respect. It was as good and valid then as it ever was, except only what it had lost by reason of the death of Myers. Kothman undoubtedly had the right to set up his judgment in his answer in the present case, and to ask for the affirmative relief for which he did ask; for such has been the well-recognized practice in this state in similar cases ever since the state has had any existence. And as no statute of limitations had so operated as to impair any right of Kothman when he filed his answer in the present case, and as no statute of limitations can run against a claim while such claim is in litigation, we think it necessarily follows that no statute of limitations has as yet run against the plaintiff's claim so as to bar or impair any of its force or efficacy, but his claim is yet as good and as valid as it was on the day of the death of J. J. Myers.

With these views, it follows that the judgment of the court below must be reversed. The judgment will therefore be reversed, and the cause remanded with the order that judgment be rendered in favor of Kothman as prayed for in his answer.

All the Justices concurring.