ADAM R. HEAD v. CYRENA E. SUTTON, *et al.*

1. ADMINISTRATOR *de son Tort;· Liability.*   Where a person appointed administrator of the estate of an intestate, prior to his appointment sells property and collects accounts left by the intestate, and has the money thereof in his possession at the time of his appointment, he is chargeable therefor in his representative capacity as administrator.

2. ―――― The rents and profits of the realty of an intestate belong, as against the administrator, to the heirs of the intestate.

3. RENTS, *Administrator not Liable to Estate for.*   An administrator, by taking possession of the realty of his intestate and collecting the rents thereof, does not thereby render himself liable in his fiduciary or representative capacity to account to the estate therefor.

*Error from Saline District Court.*

ADAM R. HEAD, on the 5th day of June, 1876, was appointed administrator of the estate of Jonah Cadwallader, deceased, and duly qualified and entered upon the discharge of his duties as such. On the 2d day of January, 1882, said administrator appeared before the probate court and made his final settlement as administrator. From the order of the court allowing said settlement, certain of the heirs-at-law, to wit, Cyrena E. Sutton, Louisa Colthar, Ida Cadwallader, Ameda Colthar, and Eva Cadwallader, appealed to the district court of the county of Saline; and certain others of the heirs-at-law, to wit, Hester A. Heed, Ollie Aldrich, and Emma Cadwallader, did not appeal from said order. At the May term of the district court for 1882, certain of the heirs-at-law, to wit, Cyrena E. Sutton, Louisa Colthar, Ameda Colthar, Emma Cadwallader, Ida Cadwallader, and Eva Cadwallader, appeared; but the other heirs-at-law, to wit, Hester A. Heed and Ollie Aldrich, did not appear. The court was requested to state its findings of fact and conclusions of law separately. On the 12th day of June, 1882, the court filed its findings of fact and conclusions of law as follows, to wit:

"FINDINGS OF FACT.

"1. That Jonah Cadwallader died intestate in November, 1875, leaving eight children; some of age, and some minors, and some of whom appear on this hearing. He also left property, real and personal, in this county and state. At first the heirs thought, and agreed among themselves, that they would have no administration upon the estate, but settle it among themselves, dividing the property and paying the few little debts there were. This plan was entered upon, and the said Adam R. Head, being the husband of one of the heirs, was intrusted largely with the duty of leading in such settlement of the affairs of the estate, and in such capacity sold property, collected accounts, paid many expenses; and upon a full settlement of his accounts and such transactions I find, after allowing him a reasonable compensation for services, all credits, etc., that there was at the time of appoint-

ment of administrator, a balance in his hands belonging to the heirs or estate of $42.50, nothing having been received at this time from the real estate.

"2. That afterward, in 1876, there being some trouble about collecting some of the outstanding accounts or claims of the estate, the conclusion was arrived at that an administrator had better be appointed; and, on the formal application of said Head and consent of said heirs, the said Head was duly appointed as such administrator, in June, 1876. He qualified and entered upon his duties as such. That at such time there was in his hands and to come to his hands as such administrator the said balance of $42.50 found in 'finding' No. 1.

"3. That as such administrator, the said Head proceeded to settle up the estate. All the debts are paid, and things are done up to this his final settlement, as such administrator. In the course of this administration, said Head took possession of, *inter alia*, certain real estate, supposing, and the heirs supposing, that it was his duty to do so; and as such administrator received the rents and profits therefrom. That aside from such rents and profits, his accounts as administrator, (not including the balance found in No. 1,) on a full settlement, after allowing all credits and compensation for services, show a balance in his hands belonging to the estate or heirs, of $83.07.

"4. That on a full settlement of his accounts for rents and profits of real estate, after allowing him a reasonable compensation for services, all credits, etc., there remains in his hands belonging to the heirs, the sum of $116.85.

"5. Mr. Head rented the real estate for the year 1876, in the month of February, and before he was appointed administrator, and by the consent of some of the said heirs.

"6. That an execution at law cannot probably be collected against the said A. R. Head."

"CONCLUSION OF LAW.

"That on this settlement Mr. Head should be discharged with the three items of balance herein found due from him, to wit, the total sum of $242.42."

*Head* brings the case here.

*Banks & Cunningham*, for plaintiff in error.

*Garver & Bond*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: It is alleged that the conclusion of law reached by the court in this case is erroneous for two reasons, viz.: First, that the court found that said Head is chargeable in his representative capacity with $42.50, due from him to the estate before his appointment as administrator. Second, that the court found that the said Head is chargeable in his representative capacity with $116.85, which he collected from the rents and profits of the real estate of the intestate. There is no finding that Head prior to his appointment as administrator, had appropriated this $42.50 to his own use. On the other hand, the court specially finds that at the time of the appointment he actually had this money in his hands. His duty was to turn this money over to himself as administrator, and under the findings it is presumed he did so. He was required by the statute to make an inventory of everything belonging to the estate which had or might come into his hands, and to administer the same according to law. Therefore in his capacity as administrator he is chargeable with the amount received by him prior to his appointment as administrator.

It is said that if an executor *de son tort* obtains letters of administration, *pendente lite*, it legalizes his previous tortious acts. (1 Williams on Executors, 6th ed., pp. 304–310; *Hill v. Curtis*, L. R., 1 Eq. 90.) Generally the rule is, that letters of administration by operation of law make valid all acts of the administrator in settlement of the estate from the time of the death. They become by relation lawful acts of administration for which he must account. (*Alvord v. Marsh*, 12 Allen, 603; *Hatch v. Proctor*, 102 Mass. 351; *Rattoon v. Overacker*, 8 Johns. 126; *Matter of Falkner*, 7 Hill, 182. See *Brown v. The State*, 23 Kas. 235.)

The real estate of the intestate descended at once to his heirs, and the title thereof was vested in them subject only to the right of the administrator to sell the same for the payment of the debts in the manner prescribed by law. (*Read-*

*ing v. Wier*, 29 Kas. 429.) So the title to the real estate, which the heirs took by descent, entitled them to the possession of it, and they had the right to receive, as against the administrator, all the rents and profits thereof. The administrator was not authorized either to take possession of the real estate of the intestate, or to collect the rents and profits. It appears from the findings that "the administrator took possession of the real estate supposing, and the heirs supposing, it was his duty to do so, and as such administrator, received the rents and profits therefrom." It does not appear from the findings, however, that the administrator charged himself with the rents, in his representative capacity, or that he brought the rents into his account with the estate, or that he made them the subject of a decree of the probate court, or that the estate had the use thereof, or received any benefit therefrom. On the other hand, the express finding of the trial court is, "that on a full settlement of the accounts of Head for the rents and profits of the real estate, after allowing him a reasonable compensation for services, credits, etc., there remains in his hands, belonging to the heirs, the sum of $116.85." As the administrator was not required by law to take possession of or account for the rents and profits as a part of the estate, and as in doing what he did concerning that matter he was, in law, not acting in a fiduciary or representative character, although he and the heirs seemed to think he was, he is not liable to account, as administrator, to the estate therefor. The law is thus stated by Schouler, in § 213 of his treatise on Executors and Administrators:

"It follows generally that if a representative takes possession of the real estate of the deceased he is accountable to the heirs as their agent, and not, strictly speaking, to the probate court in his official capacity, though for convenience he will often manage by consent of the heirs."

(*McCoy v. Scott*, 2 Rawle, 222; *Lucy v. Lucy*, 55 N. H. 9; *Rodman v. Rodman*, 54 Ind. 444; *Hankin v. Kimball*, 57 id. 42; *Newcomb v. Stebbins*, 9 Met. 540.) See also the following authorities, to the effect that if an administrator receives

the rents and profits of real estate the sureties on his bond are not liable therefor: *Gregg v. Currier*, 36 N. H. 200; *Perkins v. Perkins*, 46 id. 110; *Hutcherson v. Pigg*, 8 Gratt. 220.

We are cited to some cases where the administrator is held to be estopped from denying that the rents collected or property received were assets of the estate. In these cases however the administrator had not only received and receipted for the money or property as administrator, but had charged himself with it as administrator in his accounts, as in *Wilson v. Wilson*, 17 Ohio St. 150; or the administrator had appropriated the rents collected by him to the payment of the debts due from his estate, as in *Conger v. Atwood*, 28 Ohio St. 134; or the estate had received the benefit of the proceeds of the property wrongfully taken, as in *Simpson v. Snider*, 54 Iowa, 557.

In the case at bar the rents have not been applied to the payment of the debts of the estate, have not been used for the benefit of the estate, and the administrator has not charged himself with them in his final account.

Counsel for defendants in error suggest that there are omissions in the record, and therefore the judgment must stand. Not so. The conclusion of law is based upon the findings of fact of the trial court, and if the findings do not sustain the conclusion of law it is erroneous. (*Shoup v. Rld. Co.*, 24 Kas. 547.)

We perceive no error prejudicial to the administrator in the taxation of costs. The appeal was properly taken by parties aggrieved, and the estate recovers judgment.

The judgment of the district court will be modified to the extent of deducting therefrom the sum of $116.85. In all other respects it will be affirmed.

BREWER, J., concurring.

VALENTINE, J.: Under the facts of this case, I think that the administrator is liable to the estate for the rents collected by him as administrator. In other respects, I concur in the decision.