F. KOTHMAN v. HERMAN MARKSON.

1. ATTACHMENT *of Real Estate; Contingent Lien; Possession.* The attachment of real estate at the commencement of an action gives the plaintiff a contingent lien thereon, but does not give him a right to the possession of the estate, nor to the rents, issues and profits thereof. Until the sale and conveyance of the real estate in pursuance of the judgment in the attachment proceeding, the right of possession remains in the debtor, or in those holding under him.

2. ADMINISTRATOR; *Estoppel.* Where an administrator takes possession of the real estate of an intestate under an order of the probate court, and collects and receives rents for the same, which he reports to the probate court, and with which he charges himself as administrator, and a part of which is used for the benefit of the estate, and to pay the costs of its administration, and all is done with the knowledge and consent of the heirs of the intestate, *held,* that the administrator is estopped to deny that the rents so collected and received by him are assets of the estate.

3. DISTRICT COURT; *Equitable Jurisdiction over Estate of Decedent.* While the district court has jurisdiction over certain matters relating to the estates of deceased persons, it is an equitable jurisdiction, and in its exercise the court will be governed by the rules of equity, and the plaintiff, therefore, cannot successfully invoke the jurisdiction of the district court to enforce the payment of a claim against the estate of an intestate, where the statute has provided that the relief sought may be obtained in an ordinary legal proceeding in the probate court, and no special circumstances requiring the aid of equity are disclosed.

*Error from Leavenworth District Court.*

F. KOTHMAN brought this action against *Herman Markson* and the heirs and creditors of the estate of John J. Myers, deceased, but Herman Markson is the only defendant who has been served with summons, or in any way brought into the case. In his petition the plaintiff in substance alleged that at the May Term, 1874, of the district court of Leavenworth county, he obtained a judgment against John J. Myers for $10,751.95, and the costs of the action. When judgment was rendered therein, a large body of land that had been attached in the action was ordered to be sold. On December 10, 1874, John J. Myers died, in the state of Texas; and on the following May, Herman Markson was appointed adminis-

trator of his estate. On June 1, 1875, Markson filed an inventory of the estate, and reported that there was no personal property, but that the deceased was the owner of certain real estate which had been ordered sold to satisfy a judgment obtained by Kothman. It is further alleged that on August 17, 1875, one E. H. Skaggs began a suit in the same court to foreclose a mortgage executed by John J. Myers upon the real estate which had been attached, claiming that there was due on the mortgage $14,000; that in this suit the heirs and creditors of John J. Myers, deceased, Markson, administrator, and this plaintiff, were made parties, and that on the 30th day of April, 1881, a judgment was rendered therein that the note and mortgage of Skaggs were fraudulent and void, and by the same judgment Kothman was adjudged to be entitled to no relief, from which he prosecuted a proceeding in error to the supreme court, where the judgment was reversed, and by the mandate of that court the district court was ordered to render a judgment in favor of Kothman; that his judgment was a first and paramount lien on the real estate, and that it be sold to satisfy such judgment; that on December 16, 1882, the district court gave judgment against Herman Markson, administrator, in favor of Kothman, for the sum of $17,286.50, and decreed that the real estate of the John J. Myers estate be sold to satisfy the judgment; that judgment was affirmed on petition in error by Markson to this court, and is reported in 29 Kas. 718. In pursuance of the last judgment, execution was issued on December 13, 1882, under which the real estate mentioned was sold for $8,341, out of which sum a large amount was taken to pay taxes on the land, which it is alleged should have been paid by Markson, who had the possession of the land and received the rents thereof for the years 1875, 1876, 1877, 1878, 1879, 1880, 1881, and 1882, amounting to $3,350; that after the sale of the land was thus made there still remained due upon the plaintiff's judgment a balance of more than $9,000, which judgment is still in full force and unsatisfied. It is further alleged that Herman Markson, as administrator, has, at different times, and by four annual

settlements made in the probate court of Leavenworth county, the first of which was dated May 6, 1876, the second July 30, 1877, the third August 1, 1881, and the fourth and last on September 4, 1882, acknowledged the receipt of the rents mentioned except the sum of $400 for the rent of 1882, which had not been paid at the date of the last settlement, but which was due and paid about December, 1882; that no final settlement of the estate has been made or attempted by said Herman Markson. It is further alleged that in these annual settlements Markson presented and had allowed certain charges against the estate, which amounted to $1,039.35. Plaintiff further states that several of the claims thus presented and allowed are not proper charges against the estate, and should not have been allowed as a credit out of the rents collected and received by Markson from said lands, each of which the plaintiff seeks to surcharge and falsify. The plaintiff further alleges that after Markson was appointed administrator of the estate, he took possession of the land belonging thereto, and received the rents and profits thereof, and sought and obtained an order of the probate court authorizing him to rent said land, and that during the time from 1875 until 1881, he failed to pay the taxes upon the land, which amounted to $1,554.79, and that the interest and penalties accruing during that time upon the unpaid taxes amounted to $2,776.58, and that the taxes of 1882 on the land were $154.39, on which a penalty was charged of $7.71, all of which was paid by the sheriff of Leavenworth county out of the proceeds of the sale of the land; that a certain tract of twenty-eight acres with a value of $500, belonging to the estate, was not rented by Markson, nor did he pay the taxes thereon, but permitted it to be sold for the taxes of 1875, and permitted a tax deed to issue therefor, which was duly recorded, and the holder of such tax deed entered into possession of the land and still holds the same; that the taxes levied upon all of the lands from 1875 to 1882 were $1,584; that the interest, penalties and charges actually paid on the land were $2,784.29, being a total of $4,369.68, which was a lien upon the land, and for which it was subject to be sold, whereby the estate was dam-

aged by the failure of Markson to pay the taxes out of the rents received, in the sum of $2,784.89. The claims which were presented against the estate and allowed by the probate court are set up in the petition, and it is alleged that they were each assigned to the fifth class. It is further stated that the persons in whose favor these claims were allowed are residents of Texas, and that the plaintiff is informed that their claims have been satisfied. It is further alleged that Markson holds the rents received by him, and refuses to pay the same to either the heirs of John J. Myers or to the creditors of the estate; and that he has refused to settle with the probate court, pretending and asserting that he does not know whether the rent so collected by him should be treated as property in his hands as administrator, or as a trustee for the heirs of John J. Myers; that the heirs of John J. Myers claim to inherit and own the rents received by Markson, and that the same is not subject to the payment of the plaintiff's judgment. He further alleges that until January, 1884, Markson had proposed to make an agreed case and submit to the court to decide to whom the money received for the rents ought to be paid, whether to the heirs-at-law or to the creditors, since which time he has declined to make such submission, and has refused to pay to the plaintiff any part of the money thus received by him, asserting that the money was due to the heirs-at-law, and that the plaintiff has no right or claim thereto, and also asserting that he is not holding the money as administrator; that he was not liable to pay taxes on the land out of such funds, and that he will not pay out said money until compelled to do so by a judicial determination. Plaintiff further avers that the said real estate and the rents thereof were needed to pay the debts of John J. Myers, deceased, and that Herman Markson has been guilty of misconduct in taking and holding said money, and that he has not fairly and impartially distributed and administered said estate.

The prayer of the petition is, that the judgment in favor of Kothman be first satisfied out of the funds in the hands of the administrator, and that he may be adjudged to pay to the plain-

35—34 KAS.

tiff the sum of $3,400 so collected by him, with interest on the same from the time it was received; and for not paying the taxes on the land that Markson be adjudged guilty of a breach of his duty as trustee; and that the damage be assessed against him in the sum of $3,284.29, being interest, charges, and penalties, which were a lien and a charge upon said land while he had control and rented the same, as before set forth; with interest on that sum since December 16, 1882; and that the rights of the heirs-at-law of John J. Myers, deceased, be adjudged subject to the plaintiff's right; and that the defendants, who were not judgment creditors of John J. Myers, deceased, and whose claims have been presented and allowed by the probate court, be also adjudged not entitled to payment until the plaintiff's judgment shall be first paid and satisfied.

To this petition Herman Markson filed a demurrer, the grounds of which were: First, "The petition does not state facts sufficient to constitute a cause of action against him;" second, "The court has no jurisdiction of the cause of action;" third, "The petition shows on its face that the several matters and things set forth have been heretofore adjudicated between the plaintiff and defendant, or could or should have been." At the April Term, 1884, the cause was submitted to the court, and the demurrer of the defendant was sustained; to which ruling the plaintiff duly excepted, and brings the case to this court.

*H. T. Green,* for plaintiff in error.

*H. W. Ide,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: In his petition the plaintiff refers to earlier litigation concerning the subject-matter of this action, and as much of the history of that litigation, and of the relations existing between the present parties, may be learned from the reported decisions of this court, reference is made to them. (*Kothman v. Skaggs,* 29 Kas. 5; *Myers v. Kothman,* 29 id. 19; *Markson, Adm'r, v. Kothman,* 29 id. 718.) The allega-

tions of the petition took a wide range, but the prayer thereof considerably limits the scope of the action, and by the prayer it appears that the main object which the plaintiff seeks to accomplish is that certain money alleged to be in the hands of the defendant Markson, and which he collected while acting in the capacity of administrator, as rent for the use of lands belonging to the estate of John J. Myers, deceased, should be appropriated in payment of the judgment claim which the plaintiff holds against the estate. The first question, therefore, arising under the demurrer filed by the defendant is, whether the plaintiff has a special interest in the rents said to have been collected by the defendant upon the lands of the estate. The plaintiff claims a special interest in the rents and a preference over other creditors thereto on account of the lien which existed in his favor upon the lands from which the rents were collected, and claims that as the rents were collected during the existence of the lien, they are subject to it. It therefore becomes important to inquire as to the character of the interest which the plaintiff had in these lands. The lien under which he claims arises in this way: John J. Myers, in his lifetime, executed a promissory note in favor of F. Kothman for $10,301.32, and on January 5, 1874, Kothman began an action against Myers to recover on the note, and at the same time procured the issuance of an order of attachment which was levied upon the real estate of Myers, and for the use of which the rents sought to be reached in this action were collected. On May 29, 1874, the plaintiff recovered judgment against Myers upon the note, and obtained an order decreeing the sale of the attached land. Myers died on December 10, 1874, and Markson, the defendant, was appointed administrator of his estate. Subsequent to that time an action was brought by E. H. Skaggs to foreclose a mortgage executed by Myers in his lifetime upon the land in question, in which Kothman and others were made defendants. In that case the judgment formerly obtained by Kothman against Myers was finally adjudged to be a first and paramount lien upon the land. (*Kothman v. Skaggs,* supra; *Markson, Adm'r, v. Kothman,* supra.)

It therefore appears that the plaintiff had no special right to the lands, or to the rents and profits thereof, except such as may arise under the attachment and judgment liens that have been mentioned. It is true that rents were collected and received by the administrator during the existence of these liens, but they gave him no estate in the land, and we think no right to the rents collected during the existence of such liens. When an attachment is levied upon land the officer does not take possession of the same, nor does the plaintiff in attachment acquire any right of possession, or any right to take the issues or profits of the land so attached. By the levy of an attachment at the commencement of an action only a contingent lien upon the land is created, and until it is matured by judgment the lien cannot be enforced against the property; and when judgment is finally obtained the plaintiff acquires no other or greater interest in the land except the right to enforce the lien by a sale of the land. The rendition of the judgment and of the order decreeing the sale of the real estate does not transfer the title thereto, nor give any right of possession to the judgment creditor. Until the sale and conveyance are made, the right of possession remains in the debtor, and until the sale is completed in pursuance of the judgment and decree, neither the plaintiff nor the purchaser at the sale acquires any right to the rents, issues or profits of the real estate. It is clear that the plaintiff had no special right to the rents received, and no interest therein beyond that of a general creditor of the estate.

1. Attachment of real estate; contingent lien; possession.

By the death of Myers the legal title and right of possession to the land became vested in his heirs, and therefore they were entitled to the rents and profits of the same prior to its sale to satisfy the plaintiff's debt. (*Head v. Sutton*, 31 Kas. 616; *Reading v. Wier, Adm'x*, 29 id. 429.) As decided in the case of *Head v. Sutton*, supra, the administrator is not authorized by the statute to take possession of the real estate of an intestate, or to collect the rents and profits of the same; and as a general rule, where the administrator takes possession and collects the rents, they are not to be treated as assets of the

estate.   While this is true, we think that in this case the rents
must be treated as assets of the estate, and that the facts herein
come within the exceptions mentioned by the Chief Justice in
*Head v. Sutton.*   It is alleged in the petition that the defend-
ant sought and obtained an order from the probate court au-
thorizing him to rent the land belonging to the estate, and
that in subsequent reports to the probate court he had charged
himself with the rents in his representative capacity, and a
portion of the same has been appropriated under the order of
the probate court for the benefit of the estate, and in payment
of charges for the expenses of its administration.   This has all
been done at the instance of the defendant, and with the knowl-
edge, or at least the implied consent, of the heirs.   The ad-
ministration of the estate has been in progress since the early
part of 1875; and the administrator has ever since that time
received and charged himself with the rents as assets of the
estate subject to administration.   A report of this action was
first made to the probate court on May 6, 1876, which was
repeated in three subsequent annual settlements; but it does
not appear that the heirs have ever objected to this action, or
made any claim to the rents.   It would seem that the admin-
istrator at least would be estopped to deny that
2. Administrator;
estoppel.       the rents so collected and reported were assets of
the estate, and that he holds them in the capacity of admin-
istrator.   (*Head v. Sutton,* supra; *Wilson v. Wilson,* 17 Ohio
St. 150; *Simpson v. Snyder,* 54 Iowa, 557; *Conger v. Atwood,*
28 Ohio St. 134.)   If the facts prove to be as alleged, it would
seem that the heirs ought not now to be heard to deny that
the rents constituted assets subject to the payment of the debts
of the estate.

That the rents fall within the description of assets does not,
however, avail the plaintiff in maintaining this action, or
warrant him in invoking the equitable jurisdiction of the dis-
trict court.   The relief to which he appears to be entitled may
be obtained in the probate court.   After the property had
been sold upon which he had a specific lien he occupied the
position of a general creditor of the estate, and that portion of

his claim which remained unsatisfied after the sale should take the legal course of administration in the probate court like other claims of the same character. From his petition it appears that the estate is in course of administration; that there is considerable money in the hands of the administrator subject to the payment of debts, and that no final settlement has yet been made. Why then should he go into the district court? It is true, as held in *Shoemaker v. Brown*, 10 Kas. 383, that the district court has jurisdiction over certain

3. District court;
equitable ju-
risdiction over
estate of de-
cedent.

matters relating to the estates of deceased persons, but it is an equitable jurisdiction, and in its exercise the district court will be governed by the rules of equity, one of which is that a court of equity as a general rule will not exercise its jurisdiction where the plaintiff has a plain and adequate remedy by an ordinary legal proceeding in a tribunal especially provided by statute. And so it has been said that —

"Where the property sought to be reached constitutes, as here, the estate of a deceased debtor which has already been subjected to administration and distribution under a special tribunal having jurisdiction of the matter, the rule requiring the existence of special circumstances bringing the case under some recognized head of equity should not only be insisted upon with rigor, but some satisfactory excuse should be given for the failure of the creditor to collect his claim in the mode prescribed by law, before final settlement and discharge of the administrator." (*Collamore v. Wilder*, 19 Kas. 67. See also *Johnson v. Cain*, 15 Kas. 532, 537, *et seq.*; *Stratton v. McCandless*, 27 id. 296.)

No special circumstances requiring the aid of equity have been disclosed in this case. The probate court has yet jurisdiction of the estate, with ample power to adjust and classify defendant's claim, and to compel its payment out of any funds in the hands of the administrator which are subject to the payment of such debts. It does not appear that he has been, or will be, embarrassed in any way in obtaining relief in that tribunal. He alleges that the administrator has refused to ettle with the probate court; but it does not appear that the

plaintiff has ever presented his judgment to the probate court for allowance, or that he has invoked the jurisdiction of that court in any way. If it turns out, as the plaintiff is informed, that no other demands exist against the estate than his own, he can the more easily obtain an order of the probate court appropriating so much of the estate as remains in the hands of the administrator in payment of his demands.

Another claim made by the plaintiff is, that the defendant was unfaithful in the discharge of his trust as administrator, in failing to apply the money collected and received by him for rent upon the taxes assessed against the land. It seems that although the plaintiff obtained the judgment and order decreeing the sale of the land, in May, 1874, and before the death of Myers, it was not sold to satisfy such judgment until December, 1882. The taxes that were levied against the land in the meantime were not paid, and in consequence, penalties and charges to the amount of $2,784.29 were added to the taxes actually levied against the land. When the land was sold to satisfy the plaintiff's judgment, this amount, in addition to the taxes, was taken out of the proceeds of the sale; and the plaintiff claims to have been damaged to that extent, and he asks judgment against the defendant in that amount. Under the authority of *Reading v. Wier, Adm'x*, 29 Kas. 429, it was not the duty of the defendant to pay the taxes charged against the land of the estate prior to its sale. It is true that the default in paying the taxes when they became due very materially diminished the amount received by the plaintiff from the sale of the land, but there was no obligation resting upon the defendant to protect the lien of the plaintiff. The plaintiff obtained his judgment and order of sale long before the tax lien complained of accrued against the land; and no necessity appears, nor is any reason given, for the unusual delay in causing the land to be sold. The order decreeing the sale was given in 1875, and the sale did not occur for more than eight years thereafter; and it is not shown that during that time any effort was made by the plaintiff to procure a

sale. So that in any view that may be taken of the case, the plaintiff is not in a position to complain.

The plaintiff makes a further complaint, that certain claims have been presented to and allowed by the administrator as expenses of administration, that are not proper charges against the estate. This is another matter which comes properly within the jurisdiction of the probate court, and for which provision has been made by statute. In § 158, ch. 37, Comp. Laws of 1879, it is enacted that upon every settlement of an account by an administrator, all his former accounts may be so far opened as to correct any mistake or error therein; and § 162 of the same act provides that when the probate court, upon a hearing, shall be satisfied that an administrator has used any portion of the estate for his own advantage, or to the injury of the real parties in interest, it shall be the duty of the court to assess the amount found to be a proper charge therefor against the administrator, and for which he shall be liable upon his bond. As the final settlement of the administrator has not been made, any error or overcharge in his accounts may, and properly should be, corrected in the probate court.

We think the demurrer to the plaintiff's petition was properly sustained by the district court, and its judgment will be affirmed.

All the Justices concurring.