### BROCKWAY v. TOWNSHIP OF OSWEGO.

*(Circuit Court, D. Kansas. November 25, 1889.)*

1. DORMANT JUDGMENT—TOWNS.
   Code Civil Proc. Kan. § 445, providing that "if execution shall not be sued out within five years from the date of any judgment" the judgment shall become dormant, applies to judgments against towns, as *mandamus* is equivalent to execution.

2. SAME—REVIVOR.
   Under section 440, authorizing dormant judgments to be revived in the same manner as is prescribed for reviving actions before judgment, a judgment against a town which has become dormant may be revived in the manner prescribed.

3. SAME—LIMITATION—SUSPENSION OF PERIOD.
   Section 428 provides that, unless the parties to an action which has abated, consent to a revivor, notice of application·therefor must be served in the same manner as a summons. Section 21 provides that "if, when a cause of action accrues against a person, he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed." *Held,* that a period of time during which the town had no qualified officers on whom process could be served, and purposely·refrained from qualifying them to avoid the judgment, should be omitted from the period of limitation for reviving the judgment, the creditor having exercised due diligence.

At Law.

*Rossington, Smith & Dallas,* for plaintiff.

*Case & Glass,* for defendant.

FOSTER, J. The plaintiff, on the 5th day of April, 1888, filed his action at law against the defendant municipality upon a judgment rendered on the 22d day of November, 1876, in favor of one A. A. Brockway, in the district court of Labette county, state of Kansas, wherein

the said A. A. Brockway recovered a judgment at law against the said defendant for the sum of $2,678.90, together with $6.30 costs; the plaintiff in this suit being the assignee of said A. A. Brockway. The plaintiff, in his petition, alleges that at or about the time of the rendition of the judgment in favor of the said A. A. Brockway there was formed a conspiracy by certain citizens of defendant township for the purpose of preventing and delaying the collection of any and all judgments that might be then existing against the township, or thereafter rendered against said township; and that, in pursuance of this conspiracy, and for the purpose of accomplishing the same, the citizens of said township, by various devices, caused such a state of affairs to exist that there were no officers in said township upon whom service of process could be made from the rendition of said judgment in favor of said A. A. Brockway up to and about the time of the filing of the petition in this suit. To this petition the said defendant filed a general denial, and pleads specially that the judgment sued upon became dormant on the 13th day of November, 1881; and that no proceedings have been taken to revive the same; and that any cause of action thereon is long since barred by the statute of limitations of the state of Kansas. To this answer there was filed a general reply. A jury being waived in writing, the case was submitted to the court for trial. The evidence introduced substantially established the allegations of the plaintiff's petition as to the conspiracy. It is further admitted by the defendant as follows: That during the years 1878, 1879, 1880, 1881, 1882, 1883, 1884, 1885, and 1886 a full board of officers of said township was elected, but none of said officers so elected ever qualified or entered upon their offices. On July 12, 1887, township officers were appointed, who qualified on that date; and these were all of the appointments made, except as above set forth, as shown of record. That no officers were elected in said Oswego township, except as above, until November, 1887, when a full board was elected, and qualified on February 24, 1888. It appears that, on the 22d day of November, 1876, the said A. A. Brockway recovered a judgment in the state court for the sum of $2,678.90 and costs; that no execution or *mandamus* proceeding was had upon said judgment; that on the 15th day of June, 1882, a motion was filed to revive said judgment as dormant, but, as there were no officers of the township, no service was ever made upon any person of this motion. On the 22d day of June, 1882, Brockway's attorneys filed an affidavit for service by publication of said notice of the above motion, and such notice was published for three consecutive weeks in the Parsons Sun. On the 13th day of November, 1882, a motion was filed to revive the judgment upon the notice attempted to be served by such publication notice, which motion was denied by the court on the 18th day of November, 1882. The township appeared specially, and excepted to any order of revivor; and a case was made and taken to the supreme court, and on the 13th day of June, 1884, the supreme court affirmed the decision of the trial court in refusing to revive said action upon notice by publication of said motion. 4 Pac. Rep. 79. At the February term, 1884, said application to revive said judgment was con-

tinued for service, said notice having been issued and returned not served, and so on, from term to term, during 1884, 1885, 1886, 1887; and on the 20th day of February, 1888, said application and motion were dismissed by said plaintiff's attorneys; and on the 5th day of April, 1888, this suit was instituted to recover upon said judgment.

There is really but one question presented. Is the plaintiff barred by the statute of limitation? Section 445, Code Civil Proc., reads as follows:

"If execution shall not be sued out within five years from the date of any judgment that now is, or may hereafter be, rendered in any court of record in this state, or if five years shall have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

It is urged by the plaintiff that this statute does not apply to judgments against municipalities, because no execution can be issued on such judgments. If such is the case, judgments against municipalities would never become dormant. On this question, in the case of *U. S.* v. *Oswego Tp.*, 28 Fed. Rep. 55, Judge BREWER, of this court, expressed a negative opinion, and held that the limitation of five years did apply to such judgments, and that a *mandamus* was equivalent to an execution. With these views of my Brother BREWER this point may rest, although much might, perhaps, be said on the other side of the question. *Amy* v. *City of Galena*, 7 Fed. Rep. 163. It must, however, logically follow that, if judgments against municipalities and against individuals alike come under the rule of this statute, a failure to issue a *mandamus* for five years has the same effect as a failure to issue an execution; *i. e.*, the judgment simply becomes dormant. It must further follow that the judgment creditor, in either case, has a like period of time and like process in and by which he may revive his judgment. Section 440 of the Code of Civil Procedure reads as follows: "If a judgment become dormant, it may be revived in the same manner as is prescribed for reviving actions before judgment." It has been held by the supreme court that a judgment creditor has one year after his judgment has become dormant to revive it, and that such revivor can be made on notice and motion, as contemplated by section 428 of the Code, or by an action at law. *Baker* v. *Hummer*, 31 Kan. 325; *Angell* v. *Martin*, 24 Kan. 334; *Gruble* v. *Wood*, 27 Kan. 535; *Kothman* v. *Skaggs*, 29 Kan. 5. So the judgment creditor in this case, having failed to take out a *mandamus* for five years, had one year thereafter in which to revive his judgment, as before stated. In order to have obtained such revivor by either mode, it was absolutely necessary that he should find the judgment debtor, in order to serve notice or summons on him. Section 428, Code Civil Proc. Suppose the judgment had been against an individual, and he had left the state, or concealed himself, or absconded. Could it be claimed the statute would run during such absence, concealment, etc.? I should say it could not. Section 21 of the Code reads as follows:

"If, when a cause of action accrues against a person, he be out of the state, or has absconded, or concealed himself, the period limited for the commence-

ment of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if, after the cause of action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

It is true, the township of Oswego had not absconded, nor been absent or concealed; but all of its officers on whom any notice or process could be served were absent, absconded, or concealed during the whole of said period of time, and that with the express purpose of baffling and defeating the creditor in his attempts to revive his judgment. If it had been an ordinary case of vacancy in office, it might be urged that the creditor should have applied to the board of county commissioners to have the vacancies filled, under chapter 110, Gen. St. § 12; but in this case it would have been an idle and useless thing to do. The people of the township were united in their determination to defeat the judgments against it; and, even if the board of county commissioners should have named persons to fill the offices in said township, they could not have compelled them to qualify or serve. It seems to be a case somewhat analogous to a judgment debtor who conceals himself or absconds to prevent service of process; and I have no hesitation in saying that the action of the people of the defendant township, by keeping the offices vacant and thus preventing service of process, did not bar the judgment creditor from maintaining his action after the vacancies were filled. I have been unable to find a case exactly in point, but there are many cases holding that the existence of war suspends the statute of limitation as between citizens of the contending states. *Hanger* v. *Abbott,* 6 Wall. 532; *Braun* v. *Sauerwein,* 10 Wall. 222; *Devereaux* v. *Brownsville,* 29 Fed. Rep. 750; *Levy* v. *Stewart,* 11 Wall. 244. My attention has been especially called to the case of *Amy* v. *Watertown,* (No. 2,) 130 U. S. 320, 9 Sup. Ct. Rep. 537. That case, so far as the conspiracy by the defendant is concerned, for the purpose of defeating service of process, is quite similar to the case at bar. But, so far as diligence by the creditor to save his rights was concerned, the cases are not parallel, nor does the statute of Wisconsin contain the provisions of the Kansas statute suspending the operation of the limitations while the debtor is absconded or concealed. Judgment must go for the plaintiff.