No. 36,006

In re Estate of Sarah J. Charles, Deceased (PEARL TREBILCOCK, as Executor, etc., *Appellee*, v. BELL ENSIGN, Revived in the Name of JAMES ENSIGN, as Administrator, etc., et al., *Appellants*).

(148 P. 2d 765)

Opinion filed May 6, 1944.

*W. L. Bullock,* of Dodge City, and *John A. Etling* and *W. N. Beezley,* both of Kinsley, were on the briefs for the appellants.

*E. C. Minner* and *Russell L. Hazzard,* both of Dodge City, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from an order approving the final account of an executor.

A detailed statement of facts leading up to and responsible for this lawsuit is required in order that the issues may be fully understood. They are as follows: Sarah J. Charles died testate and her will was admitted to probate in Ford county, Kansas, on September 21, 1929; under its terms the executor therein named was directed to serve without bond and given authority to sell and make conveyance of any and all property of whatsoever kind left by the de-

cedent at public or private sale, subject to the approval of the probate court, in the same manner as such decedent could make sale thereof if living; on the day the will was admitted to probate Pearl Trebilcock was appointed executor and letters testamentary were issued to him; he failed to subscribe to the oath required by the statute and gave no notice of his appointment; however, he took over all property belonging to the estate, consisting mostly of real estate and for many years was recognized by everyone concerned, including heirs, creditors and debtors of the estate, and the probate court, as executor of the estate with full power, control and direction, over the real estate owned by the decedent on the date of her death; during that time he collected rents and made and paid for repairs on the property with full knowledge of such action on the part of the heirs and for most, if not all, of it with their consent and approval. On October 2, 1929, the executor filed an inventory and appraisement showing the assets of the estate to be real estate amounting in value to $11,000 and personal property amounting in value to $700, the greater portion of which was furniture and none of which was in the form of cash; Trebilcock made no report or account of his administration until subsequent to August 14, 1941, when on application of certain heirs, appellants herein, the probate court cited him to appear for examination; from July 21, 1932, the date on which it appears a petition for extension of time for final settlement was filed by the executor, until the date of the filing of the application referred to, the record is silent as to his activities.

Subsequent to August 18, 1941, the record in the probate court discloses the following facts so far as it involves action on the part of the executor: The filing on September 2, 1941, of an unsigned and unverified account consisting of a general statement of amounts received and paid out by him in his official capacity, without regard to receipts and expenditures pertaining to the real estate, and a statement of what he termed were "obligations of the estate," alleged to be $1,300 for money advanced by him to pay off a loan on one of the properties and $276.57 for taxes advanced by him to pay taxes on real estate; the filing of an application on October 8, 1941, for extension of time in which to close the estate.

On October 11, 1941, the probate court directed the executor to file within thirty days a full accounting and report of his administration of the estate, including all moneys received and paid out by him, and on November 10 following, this report, which was also

unsigned and unverified, was filed. It consisted of a general statement of all receipts and expenditures, including all rents collected, repairs made on the real estate, and other items of expense incurred by Trebilcock from the date of his appointment to the date of the filing of such statement.

Sometime between this last date and November 26, 1941, the day on which the executor filed his petition for final settlement, something happened, the nature of which is not disclosed by the record. At any rate, when the petition was filed it included no account of receipts and expenditures incurred in the management and control of the real estate, but did contain a statement, the truth of which is undenied, that at the direction of the probate court all items of that character were omitted therefrom.

Other material facts set forth therein were as follows: The only money received by petitioner as executor from the estate had been for rents which had been collected from the real estate and an attempted sale thereof; from moneys so collected there had been paid the expenses of the estate in the sum of $500.09, as listed in the petition and that all other money collected by him had been expended for repairs, maintenance and taxes on the real estate owned by the decedent on the date of her death.

The petition further alleged: Payment in 1929 of a note secured by mortgage on some of the real estate, $1,300 of which was paid by petitioner out of his own funds, for which amount he was entitled to reimbursement with interest at six percent from August 8, 1930; that for the purpose of securing the benefits for the estate of the privilege of the tax moratorium law, at the request of the heirs petitioner had advanced the sum of $276.57 from his own funds in payment of taxes for which he was entitled to reimbursement with interest at six percent from August 30, 1941, the date of such payment.

Further allegations of the petition, excepting certain matters immaterial for purposes of this review, to be found therein described the real estate owned by the decedent at the time of her death, and sought its sale for the purpose of paying costs of administration, executor's fees, attorney fees, and the advancements made by the petitioner.

On December 29, 1941, the date of the hearing on the petition for final settlement, Bell Ensign, one of the heirs and a devisee and legatee under the will of decedent, objected to the approval of the

executor's account and the making of any order of allowance for any claims made by him for reimbursement and to any order for the sale of the real estate as prayed for in such petition. On the same date the probate court approved the final account, allowed the amounts claimed by the executor as due him for payments made by him personally for taxes and in satisfaction of the mortgage referred to and ordered the real estate sold for the purpose of providing funds for payment of such claims and other minor expenses of administration.

A few days thereafter, and within the time provided by statute for the taking of appeals, three of the heirs, the appellants herein, gave notice of an appeal from the probate court's judgment, a portion of which notice reads:

"You and each of you are hereby notified that Bell Ensign, Etta Lutzen Hiser and Myrtle McKelvy appeal from the order, judgment, decree and decision of the probate court of Ford County, Kansas, rendered in the above entitled matter on the 29th day of December, 1941, in which the court made an order judgment, decree and decision allowing the claims of Pearl Trebilcock against the Estate of Sarah J. Charles, in the sum of $1,300 and $276.57, and order directing sale of the property."

After the appeal had been certified to the district court the heirs filed a motion requesting that court to require the executor to file a full account of his administration of the estate, showing all receipts and disbursements claimed by him in his representative capacity, or otherwise, on the ground the report as made by him in his petition for final settlement was so limited it was impossible for them to know what disposition he had made of the property inventoried by him, what receipts he had charged himself with, what items he claimed credit for, and that in its then status and form it was impossible for appellants to join issue on the account set forth in such petition, or any item thereof, or to prepare for trial. This motion was overruled.

On the trial in the district court the trial judge limited the issues to questions specifically referred to in the notice of appeal from the probate court, namely, the propriety of the allowance of the amounts claimed to have been advanced by the executor for the benefit of the estate and the order directing the sale of the real estate for the purpose of supplying funds which were to pay such claims and other expenses of administration.

On direct examination, Trebilcock was a witness in his own behalf and among other things testified to the following facts:

"In May 1930 I paid $1,503.34 to pay off this mortgage. I used my money. $203.34 of this was paid back to me on June 2, 1930, from money I had on hand from rents. I never have received anything further on this amount I had advanced and no part of this $1,300.00 was ever repaid to me in any manner through the estate. . . . In 1941 I advanced $232.04 on lots 11 and 12 and on lot 9 my report shows I advanced $44.53; total $276.57 as shown by my report. That was my individual money. There were quite a bit back taxes on the real property and I used that money I had and then I had to have this much more money. At that time I had some balance on hand that I had received from collection of rents from these properties but not enough to pay all the real property tax but what I had on hand and the $276.57 I advanced was enough. No part of this $276.57 was ever repaid to me. . . ."

On cross-examination counsel for the heirs sought to interrogate this witness with respect to receipts received by him from all sources and expenditures paid out by him for all purposes from the date of his appointment to the date of the trial. Objection was made and sustained to each and all such questions on the ground they were incompetent, irrelevant and immaterial, not proper cross-examination and not within the issues. A similar objection was made and sustained to evidence offered by the heirs tending to show the amount of taxes paid by Trebilcock to the county treasurer during such period of time.

The judgment of the district court was substantially the same as the one rendered in the probate court. The executor's claims for $1,300 and for $276.57 were each allowed and the real estate belonging to the estate of Mrs. Charles, or so much thereof that might be necessary, was ordered sold to pay such claims together with all costs of the action. After its rendition the heirs served notice of appeal.

We turn first to appellants' contention the trial court unduly limited the issues on the trial. An examination of the record discloses beyond per adventure of a doubt its theory was that the notice of appeal, heretofore set forth, limited appellants to the issues of whether the estate, under the facts and the law, was indebted to the executor for advancements made by him and, if so, whether the real estate should be sold to satisfy the amount found to be due therefor. All evidence pertaining to other items as to rents collected from real estate by the executor and disbursements made by him from the proceeds thereof was rejected as not within the issues. It must be remembered the principal issue in probate court was approval or disallowance of the executor's final account and one of the appellants had objected to its allowance. The judgment found such

account to be correct and approved it in its entirety. The notice of appeal specified the appeal was from "the order, judgment, decree and decision of the probate court of Ford county, Kansas, rendered in the above entitled matter on the 29th day of December 1941." True, it contained the additional language, "in which the court made an order judgment, decree and decision allowing the claims of Pearl Trebilcock against the estate of Sarah J. Charles, in the sum of $1,300 and $276.57, and order directing sale of the property," which appellee insists and the trial court concluded limited the issues as heretofore indicated. We think not. A statute giving a litigant the right of appeal is to be liberally interpreted. We find nothing in our statute (G. S. 1943 Supp. 59-2401) requiring the use of any particular language in order to effectuate an appeal. Here the appeal was from the orders, judgment, decree and decision of the court, rendered on the 29th day of December, 1941, in connection with the Charles estate and the only matter pending or judgment rendered in the probate court in that estate on that day was one determining the rights of appellee on his petition for a final settlement and accounting. The inclusion in the notice of the additional language heretofore last quoted amounted in our opinion to "language of identification" not "language of limitation" as contended by appellee and we hold it should not be construed as limiting the issues to two items of many included, or that should have been included, in the account set forth in the petition for final settlement.

We next give our attention to the contention the trial court erred in overruling appellants' motion to require the executor to make and file a full account of his administration of the estate, including all receipts received by him and all disbursements paid out irrespective of their source or purpose. Appellee in defense of that ruling points to the rule that an administrator ordinarily has nothing to do with real estate of a decedent when it is not necessary to pay debts. Quite so. We have thus held in *Lindholm v. Nelson*, 125 Kan. 223, 264 Pac. 50; *Firmin v. Crawford*, 140 Kan. 370, 36 P. 2d 970; *Hill v. Grand Lodge of I. O. O. F.*, 157 Kan. 34, 139 P. 2d 438, and many other cases which could be cited. But this argument overlooks the fact that there are exceptions to this rule. In *Firmin v. Crawford*, supra, it was said:

"It needs little citation of authority to show that as administrator he had nothing to do with the rents from the real estate (*Lindholm v. Nelson*, 125 Kan. 223, 264 Pac. 50, and cases cited; 11 R. C. L. 123; 23 C. J. 1139), *although under certain circumstances the heirs or devisees may be estopped to recover*

*as against him* where the moneys have been applied to taxes and mortgage payments with their knowledge and consent." (p. 372.) (Emphasis ours.)

Under circumstances and conditions similar to those existing here a case more in point is *Kothman v. Markson*, 34 Kan. 542, 9 Pac. 218, wherein it was held:

"Where an administrator takes possession of the real estate of an intestate under an order of the probate court, and collects and receives rents for the same, which he reports to the probate court, and with which he charges himself as administrator, and a part of which is used for the benefit of the estate, and to pay the costs of its administration, and all is done with the knowledge and consent of the heirs of the intestate, held, that the administrator is estopped to deny that the rents so collected and received by him are assets of the estate." (Syl. ¶ 2.)

And said:

"By the death of Myers the legal title, and right of possession to the land became vested in his heirs, and therefore they were entitled to the rents and profits of the same prior to its sale to satisfy the plaintiff's debt. (*Head v. Sutton*, 31 Kan. 616; *Reading v. Wier, Adm'x*, 29 id. 429.) As decided in the case of *Head v. Sutton*, supra, the administrator is not authorized by the statute to take possession of the real estate of an intestate, or to collect the rents and profits of the same; and as a general rule, where the administrator takes possession and collects the rents, they are not to be treated as assets of the estate. While this is true, we think that in this case the rents must be treated as assets of the estate, and that the facts herein come within the exceptions mentioned by the Chief Justice in *Head v. Sutton*. It is alleged in the petition that the defendant sought and obtained an order from the probate court authorizing him to rent the land belonging to the estate, and that in subsequent reports to the probate court he had charged himself with the rents in his representative capacity, and a portion of the same has been appropriated under the order of the probate court for the benefit of the estate, and in payment of charges for the expenses of its administration. This has all been done at the instance of the defendant, and with the knowledge, or at least the implied consent, of the heirs. The administration of the estate has been in progress since the early part of 1875; and the administrator has ever since that time received and charged himself with the rents as assets of the estate subject to administration. A report of this action was first made to the probate court on May 6, 1876, which was repeated in three subsequent annual settlements; but it does not appear that the heirs have ever objected to this action, or made any claims to the rents. It would seem that the administrator at least would be estopped to deny that the rents so collected and reported were assets of the estate, and that he holds them in the capacity of administrator. (*Head v. Sutton*, supra, *Wilson v. Wilson*, 17 Ohio St. 150; *Simpson v. Snyder*, 54 Iowa, 557; *Conger v. Atwood*, 28 Ohio St. 134.) If the facts prove to be as alleged, it would seem that the heirs ought not now to be heard to deny that the rents constituted assets subject to the payment of the debts of the estate." (p. 548.)

See, also, 33 C. J. S. 1270, § 259, stating:

"The consent of heirs or devisees may warrant the collection of rents of real estate by the executor, and the receipt of rents and profits of real estate with such consent gives the representative a lawful possession and a good title against all persons except the heirs. . . . An executor or administrator who takes over the possession, control, or use of the real property of his decedent must account for the rents and profits which he received or should have received, although it seems that where he acts diligently and honestly with regard to realty in his possession and control he is liable only for such rents and profits as he may have received. . . . Whether the representative's liability to account for rents and profits is in his representative or his individual capacity depends on the facts of the particular case. . . . It is usually considered that, where the representative has received rents and accounted therefor or paid them out in discharge of the debts of his decedent, he is precluded from alleging that they belong to the heir and that he received them without authority, and those entitled to the rents may charge him therewith in his representative capacity as for assets rightfully received. . . ." (pp. 1270-1273.)

In the instant action the appellee for more than 13 years had been acting as executor of the estate of Sarah J. Charles. From the very moment of his appointment he took over and retained the possession and control of the decedent's real estate. During all that time he collected rents and maintained the properties, he paid expenses of administration, including funeral expenses of the decedent, out of rents collected and received from such properties for he had no other source from which to pay them. All these things and many others pertaining to matters affecting the real estate he did with the full knowledge, acquiescence, consent and approval of the heirs of the decedent, the devisees and legatees under the terms of her will, as well as that of the probate court which had supervisory power over his official conduct and action. So far as the heirs are concerned the record discloses this action on the part of the executor as well as his conduct in making advancements for the benefit of the estate for which he expected to be reimbursed, came about as a result of requests from some if not all of such heirs. At any rate, it is apparent it was not until after many years of understanding and cooperation between all the parties that it occurred to the executor or any of the devisees that the manner in which the real estate had been handled could be used either as a weapon of offense or one of defense when it came to the closing of the estate and the making of final settlement. Under the circumstances and conditions just related we think the rule announced in *Kothman v. Markson*, supra,

is applicable and that not only the executor, but the heirs as well, are estopped to deny that rents collected and received by the appellee are assets of the estate and held by him in his fiduciary capacity.

Aside from the result just stated there is another reason why the parties would be precluded from successfully contending the executor's control of the real estate over the years was without the scope of his duties as such. The will gave him power to sell and directed that the *proceeds of the rest and residue of her estate,* after a disposition of certain personal property, should be divided share and share alike among her children, naming them. Without deciding the question, it can safely be said that the probate court, the children, and the executor proceeded throughout on the theory the terms of the will gave the latter the custody and control of the real estate until it was sold and the proceeds divided as provided for therein. Certain it is that as between the children and the executor the legal title was in the latter and the practical interpretation to place on such a course of conduct, is that appellee held possession and had control of such property during the period of time involved with the consent of all parties and when he collected rents and paid out proceeds of collected rentals he did so for the benefit of and on behalf of the estate. No other conclusion could be just or equitable.

The conclusion just announced compels a decision that the trial court erred in refusing to require the appellee to make a full account of his administration of the estate and in overruling the motion to require that action. It requires also the conclusion it was error to restrict the cross-examination and refuse the appellants the right to bring forth in that manner or by direct testimony evidence relative to all receipts received and expenditures incurred by the executor during his tenure as representative of the estate, irrespective of their character or the source from which they sprang.

Finally appellants urge the claim of the appellee was barred by the statute of limitations and by the statute of nonclaim. Cases cited by them have been examined but we fail to see where they support their position. They deal with claims of creditors having demands against a decedent's estate and not with the rights of an executor who seeks to be reimbursed at the time of his final settlement and accounting for advances made by him for the benefit of the estate he represents.

Other alleged errors are pointed to but for the most part are based

on questions having to do with the limiting of the issues and the exclusion of evidence. Since the case is to be reversed and a new trial granted those matters will not be in controversy and do not require our consideration.

The judgment is reversed and a new trial granted.