No. 55,012

Union National Bank & Trust Company, of Manhattan, Kansas, Conservator of the Estate of Herman A. Werning, An Incapacitated Person, *Appellant*, v. The Estate of Herman A. Werning, Deceased, Paul E. Miller, Administrator, *Appellee.*

(665 P.2d 192)

Opinion filed June 10, 1983.

*Charles S. Arthur,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause and was on the brief for appellant.

*Anne Burke Miller,* of Ball & Miller, of Manhattan, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFarland, J.: The issue presented in this appeal is whether the nonclaim statute (K.S.A. 59-2239) bars payment from a decedent's estate of conservatorship and guardian fees and expenses allowed in a conservatorship estate where no claim or demand has been filed in the decedent's estate within six months after the date of the first published notice to creditors. The district court held the failure of the conservator Union National Bank & Trust Company of Manhattan, Kansas, to exhibit a claim in the decedent's estate pursuant to K.S.A. 59-2239 barred payment of same by the decedent's estate. The bank appeals from said determination.

Defendant Estate of Herman A. Werning, deceased, is in agreement with the facts as recited in the appellant bank's brief. These facts are summarized as follows. On July 3, 1980, the Riley County District Court issued Letters of Conservatorship to the

bank for Herman A. Werning, an incapacitated person (Case No. 80 P 53). The ward's daughter, Wilma A. Brooks, was named guardian of Mr. Werning.

On May 6, 1981, the ward died intestate. On May 15, 1981, Mr. Werning's widow, Helen L. Werning, petitioned the Riley County District Court (Case No. 81 P 46) to appoint an administrator for the estate of Herman A. Werning, deceased. On May 19, 1981, notice to creditors was published pursuant to K.S.A. 59-2236 by the decedent's estate.

On May 26, 1981, the conservator bank filed a petition in the conservatorship for final settlement including allowance of fiduciary fees and expenses. On July 29, 1981, the Court in the conservatorship allowed the following fees and expenses: (1) guardian fees $660.00; (2) guardian expenses $675.00; (3) conservator fees $1,065.00 and (4) conservator expenses (attorney fees) $2,915.17. On the same date the conservator bank was directed to pay the deceased's funeral bill and $500.00 to the guardian ad litem. The guardian and guardian ad litem were each discharged at that time. The conservator bank paid the funeral bill. Additionally the guardian was paid her expenses and a partial payment was made on the guardian fees. There were insufficient liquid assets in the conservatorship to pay the balance of the allowed fees and expenses.

Mr. Werning left three heirs. They are his two daughters, Wilma A. Brooks and Adria Gay Parker, and his widow, Helen L. Werning, who is the stepmother of deceased's daughters. There was much dissension among the heirs as to who should be appointed administrator. As a result thereof the administrator, Paul E. Miller, was not appointed until October 20, 1981. In the interim period the bank performed services for the decedent's estate in an unofficial capacity but the bank's claim for fees and expenses does not involve any of these transitional services. On November 19, 1981, the six-month period for exhibiting claims against the decedent's estate, pursuant to K.S.A. 59-2239, expired. On May 19, 1982, the bank filed a "Petition to Intervene and For Order to Deliver Funds" in the decedent's estate. The purpose of the petition was stated as follows:

"Petitioner further states that it should be permitted to intervene in this proceeding as a party who has an interest in the assets of the decedent's estate, That the court should enter its order directing the administrator to pay the

following fees, expenses and costs in Case No. 80 P 53 [conservatorship] in this court, to-wit:

(1) To Wilma Brooks for the balance due for guardian's compensation.    $ 454.00

(2) To the Union National Bank & Trust Co., for conservator's compensation.    1,065.00

(3) To the Union National Bank & Trust Co., for its attorneys' fees.    2,915.17

(4) To this court for costs.    _____"

On June 11, 1982, the petition was heard. On September 2, 1982, the petition was denied on the grounds the claim was barred by K.S.A. 59-2239. The Bank, former conservator, appeals therefrom.

The issue presented appears to be one of first impression in Kansas. The nonclaim statute, K.S.A. 59-2239, provides:

"(1) *All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent,* including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor, or indemnitor, and including the individual demands of executors and administrators, *not exhibited as required by this act within six (6) months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment,* except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of said decedent's death, unless a petition is filed for the probate of the decedent's will or for the administration of the decedent's estate within nine (9) months after the death of the decedent and such creditor shall have exhibited his or her demand in the manner and within the time herein prescribed, except as hereinafter provided.

"(2) Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim. For the purpose of enforcing such claims, the estate of the decedent may be opened or reopened, a special administrator appointed, and suit filed against said administrator within the period of the statute of limitations for such action. Any recovery by the claimant in such action shall not affect the distribution of the assets of the estate of the decedent unless a claim was filed in the district court within the time allowed for filing claims against the estate under subsection (1) of this section or an action commenced as provided in subsection (2) of K.S.A. 59-2238. Such action may be filed in any court of competent jurisdiction and the rules of pleading and procedure in such cases shall be the same as apply in civil actions. Any such special administration shall be closed and the special administrator promptly discharged when the statute of limitations for filing such actions has expired and no action has been filed or upon conclusion of any action filed. All court costs incurred in a proceeding under this subsection shall be taxed to the petitioner." (Emphasis supplied.)

K.S.A. 59-2236 sets forth the requirements of the published notice to creditors of a decedent's estate and is reproduced in pertinent part as follows:

"59-2236. **Notice to creditors.** The publication notice to creditors shall be to all persons concerned. It shall state the date of the filing of the petition for administration or petition for probate of a will and shall notify the creditors of the decedent to exhibit their demands against the estate within six (6) months from the date of the first published notice as provided by law, and that if their demands are not thus exhibited they shall be forever barred."

K.S.A. 59-2237 sets forth how a demand may be exhibited in a decedent's estate and is reproduced in pertinent part as follows:

"Any person may exhibit his or her demand against the estate of a decedent by filing a petition for its allowance in the proper district court. Such demand shall be deemed duly exhibited from the date of the filing of said petition. The petition shall contain a statement of all off-sets to which the estate is entitled. The court shall from time to time as it deems advisable, and must at the request of the executor or administrator, or at the request of any creditor having exhibited demand, fix the time and place for the hearing of such demands, notice of which shall be given in such manner and to such persons as the court shall direct."

To recapitulate, K.S.A. 59-2239, the nonclaim statute, provides *"[a]ll demands . . . against a decedent's estate . . . not exhibited* as required by this act within six (6) months after the date of the first published notice to creditors as herein provided, *shall be forever barred from payment . . . ."* (Emphasis supplied.) Are the guardian's fees, conservator fees and conservator expenses for which payment is sought herein encompassed within the statutory term *all demands?* We believe logic mandates the question be answered affirmatively.

As stated in *Gano Farms, Inc. v. Estate of Kleweno,* 2 Kan. App. 2d 506, 582 P.2d 742, *rev. denied* 225 Kan. 844 (1978):

"The characterization of the nonclaim statute as a special statute of limitations is found throughout the Kansas cases. See, *In re Estate of Dumback,* 154 Kan. 501, 119 P.2d 476 (1941); *Hutchinson v. Pihlblad,* 157 Kan. 392, 139 P.2d 835 (1943); *Jardon v. Price,* 163 Kan. 294, 297, 181 P.2d 469 (1947); *In re Estate of Bowman,* 172 Kan. 17, 238 P.2d 486 (1951); *In re Estate of Brasfield,* 168 Kan. 376, Syl. 5, 214 P.2d 305 (1950); *In re Estate of Wood,* 198 Kan. 313, Syl. 2, 424 P.2d 528 (1967)." 2 Kan. App. 2d at 508.

Continuing:

"The Nebraska Supreme Court explained in *Storm v. Cluck,* [168 Neb. 13, 95 N.W.2d 161 (1959)], that nonclaim statutes are special statutes of limitations that are more rigorously enforced than general statutes of limitations. The defense of

nonclaim generally cannot be waived by the administrator, and the statute runs regardless of the minority or incompetency of the claimant." 2 Kan. App. 2d at 509.

"All demands" is certainly broad language. As noted in 3 Bartlett, Kansas Probate Law and Practice § 1316 (Rev. ed. 1953):

"The language of the nonclaim statute is clear, unambiguous, and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, or which can charge the assets in his hands subject to administration, or more expressive of every liability, resting upon the decedent, could not have been employed."

In *In re Estate of Grindrod,* 158 Kan. 345, 148 P.2d 278 (1944), this court discussed the broad application of the statute as follows:

"The words, 'all demands,' as used in [K.S.A.] 59-2239, which require demands to be exhibited in the probate court within a stated time *were intended to be all-inclusive* and *to include claims or demands of every type and character against a decedent's estate* and *to any portion thereof,* except in particular cases where a statute may expressly provide otherwise." Syl. ¶ 5. (Emphasis supplied.)

Exceptions from the requirement of having to file claims against a probate estate are not favored by law. One treatise has observed:

"[I]n general the course of legislative and judicial thought has been that it is better policy to deny exceptions to the bar of the nonclaim statute rather than to impair its final effect by allowing exceptions, however meritorious." Atkinson, Law of Wills § 127, p. 691 (2d ed. 1953).

K.S.A. 59-2239(2) provides a limited exception to the six-month limitation imposed on those making demands against an estate. It provides an individual who has a tort claim against the decedent may file suit against the personal representative at any time within the statute of limitations for the tort action itself, notwithstanding the limitations of K.S.A. 59-2239. *Gatewood v. Bosch,* 2 Kan. App. 2d 474, 478, 581 P.2d 1198 (1978).

In 1979 Mr. Richard C. Harris, writing in the Kansas Law Review, commented:

"[T]he Kansas nonclaim statute has long been held to be an absolute bar to all demands against a decedent's estate that are not timely filed. This rule is relied upon by heirs and beneficiaries, as well as all others dealing with the estate. Any weakening of this bar tends to bring an uncertainty into the administration of estates that has been missing since the adoption of the probate code in 1939. At some point it should be possible to know with certainty exactly what remains in an estate after the payment of all debts, taxes, and expenses of administration, so that the estate can be properly closed and distributed with finality." Harris,

*Survey of Kansas Law: Wills, Trusts, and Probate,* 27 Kan. L. Rev. 365, 372 (1979).

Bartlett's Kansas Probate Law and Practice, in discussing the purpose of the nonclaim statute, declared:

"It is a very simple matter to stop the running of the statute in the matter of presenting claims against estates if a claimant manifests the lightest diligence regarding his rights; and the object of the statute is that he shall be required to do so. An evident purpose of the statute is to protect the executor or administrator against stale claims and to enable him to close the estate and distribute the balance thereof without unnecessary delay. A primary purpose is the speedy settlement of the estates of deceased persons in the interest of creditors, heirs, legatees, and devisees, and to render certain the titles to real estate. A speedy administration of the estate is for the benefit of creditors, who have the priority of right; and, when their claims are satisfied, for the payment of legacies or distribution to the heirs. When beneficiaries or heirs succeed to the estate it should be to a title freed from the incumbrance of or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and especially of the statute of nonclaim. In the absence of this statute, a settlement of an executor or administrator and the payment of legacies or distributive shares would be attended with the peril of future litigation by creditors against the beneficiaries and distributees to subject their legacies or distributive shares to the payment of debts. In making distribution or paying legacies, the personal representative would act at his own hazard.

"The statutes are therefore deemed to operate as a complete bar to all demands which could be charged on the assets subject to administration; a bar on which the personal representative could rely with safety, and proceed to pay legacies or make distribution; a bar which a creditor could invoke to protect the assets subject to the payment of his debt from diminution by being compelled to allow participation therein by those not having presented their claims within the prescribed period; a bar on which the heirs and beneficiaries may insist, for the exclusion of all claims not presented, which would reduce or exhaust the assets otherwise subject only to pay legacies or to distribution." 3 Bartlett, Kansas Probate Law and Practice § 1316 (Rev. ed. 1953).

The district court in its opinion denying the conservator's action to intervene and take funds from the sale of the deceased's real estate, noted the repercussions the bank's argument could have upon the stability and certainty of probate administration as follows:

"Once the conservator has delivered the assets to the fiduciary of the decedent's estate they are assets of the estate. One of the paramount reasons for K.S.A. 59-2239 is for the orderly and timely administration of the estate and to provide a time frame in which the administrator or executor will be advised of any claims or demands being made so that final settlement and distribution of the remaining assets to the rightful heirs and/or beneficiaries can be made."

*Jones v. St. Francis Hosp. & School of Nursing,* 225 Kan. 649,

594 P.2d 162 (1979), has been cited by both parties to this action and was referred to by the court below. In *Jones* the hospital obtained a personal judgment against the deceased before his death. After his death the hospital did not comply with the nonclaim statute. The hospital's claim was held barred by reason of its failure to comply with K.S.A. 59-2239. The estate in the instant action asserts the status of the hospital, as a judgment creditor, is akin to the status of the conservator bank in the present litigation. Namely, both the hospital and the bank had obtained court judgments. The hospital had obtained its judgment through a personal action against the deceased before his death and the bank had received its judgment in the final accounting of a conservatorship. As the court in *Jones* ruled it was necessary for the hospital to have taken its personal judgment and complied with K.S.A. 59-2239, the estate herein argues it was also necessary for the conservator to have taken its award in the conservatorship case and complied with the nonclaim statute by filing a claim in the decedent's estate. The district court herein found *Jones* persuasive when it stated:

"Certainly the case of *Jones v. St. Francis Hospital and School of Nursing*, 225 Kan. 649, is factually different than the issue before the court, but I find that its legal principle still applies. There the judgment had been entered and it was in the nature of an unsecured demand or lien and the court ruled it must be filed within the time limits of K.S.A. 59-2239."

While *Jones* is factually distinguishable from the instant action, *Jones* and its legal ancestors, *e.g.*, *Burns v. Drake*, 157 Kan. 367, 139 P.2d 386 (1943); *In re Estate of Charles*, 158 Kan. 460, 148 P.2d 765, *modified on rehearing* 159 Kan. 228, 154 P.2d 117 (1944); *In re Estate of Bourke*, 159 Kan. 553, 156 P.2d 501 (1945), 157 A.L.R. 1107, stand for the proposition a party seeking to remove something from a decedent's estate must comply with the nonclaim statute in the absence of an express statutory exception such as set forth in K.S.A. 59-2239(2). No such statutory exception exists applicable to the guardian and conservator fees and expenses herein.

We therefore conclude the district court did not err in holding the bank's claim for guardian and conservator fees and expenses was barred by the nonclaim statute, K.S.A. 59-2239.

The judgment is affirmed.

MILLER, J., dissenting.